## Pierce vs. Northey.

A party denying the signature to a paper, cannot, upon the cross-examination of witnesses who have testified that they know his hand-writing and believe the disputed signature to be his, show them papers purporting to be signed by him, the genuineness of which has been neither admitted nor denied, and ask them whether they believe the signature to such papers to be his, for the purpose of impeaching their credibility by their disagreement upon that point, or if they answer in the affirmative, by afterwards showing that the signature thus exhibited was written by another person.

Where a complaint professes to give a complete copy of the note sued upon, and the note produced on the trial is different from that described in the complaint, the defendant may show that the note has been altered, so far as such difference exists, since its execution, although the execution of the note was not denied in the answer.

The application of a defendant, after verdict, to increase the amount demanded in his counter-claim, so as to correspond with the amount found by the jury, should be denied; or if allowed, should be upon condition that he relinquish the verdict, pay the plaintiff's costs of the trial, and submit to a new trial.

Costs which a party is compelled by an order of a court to pay as the condition of opening a judgment which has been rendered against him, cannot become a ground of action or claim against the party by whom the costs were received.

ERROR to the Circuit Court for *Walworth* County.

*Pierce* entered up judgment in vacation, against *Northey*, under a warrant of attorney, upon four notes. In the body of each note was a memorandum stating that the defendant had deposited with the plaintiff a quantity of grain, as

January Term,
1861.

PIERCE
v.
NORTHEY.

security for its payment, with power of sale, &c.; and the judgment was for $223, the balance claimed to be due after deducting the proceeds of the grain. The memorandum as to the deposit of the grain was *omitted* in the copy of each of the notes contained in the complaint. Upon the application of *Northey* the judgment was opened, and he was allowed to file an answer to the complaint, denying the execution of one of the notes, which was for the sum of $422, and alleging that he had delivered grain to the plaintiff of the value of $250 more than the amount of the other three notes, and demanding judgment for that sum. Reply in denial. On the trial, the plaintiff called several witnesses, who testified that the signature to the note of $422 was in the defendant's hand writing. On cross examination, sundry slips of paper were handed to these witnesses, and they were asked if the name "Gilbert Northey," written upon them, was in the handwriting of the defendant. The plaintiff objected to the introduction of the slips and to the question, but the court overruled the objection. Several of the witnesses answered that they had no doubt the signatures on the slips were in the handwriting of the defendant; others, that some of them were not in the defendant's handwriting. *Northey*, as a witness in his own behalf, then testified that he never signed the note in controversy, and that the signatures on the slips were not in his handwriting, but were copied, in his presence, from his genuine signature, by means of colored impression paper. The witness was also asked by his counsel, if the memorandum in each of the other notes as to the deposit of grain as security, was there when he signed them. This question was objected to, on the ground that the defendant had not denied the execution of the other notes, but the objection was overruled, and he answered the question in the negative. The jury were permitted, against the objection of the plaintiff, to take the slips that had been exhibited to the witnesses on cross-examination, to examine in considering of their verdict. Verdict for the defendant for $365 ; but it was admitted in the bill of exceptions, that the jury had included in the verdict $80 costs, which the defendant had been obliged to pay as a condition of opening

the judgment entered under the warrant of attorney. After the verdict was returned, the defendant moved the court for leave to amend his answer and counter-claim by increasing the amount demanded to $365, so as to correspond with the verdict, and leave was granted, the plaintiff excepting. The plaintiff moved for a new trial, producing the affidavits of two of the jurors, that $80, costs above referred to, were included in their verdict; but this motion was overruled. Judgment on the verdict.

*Winsor & Smith,* for plaintiff in error, as to the inadmissibility of the signatures upon the slips, cited 2 Phil. Ev., 3d ed., 257; *Griffits vs. Ivery,* 11 Adolph & El., 322; *Hughes vs. Rogers,* 8 Mees. & Wel., 123; *Doe vs. Newton,* 5 Adolph. & El., 514; *Jackson vs. Phillips,* 9 Cow., 94; *Odiorne vs. Winkley,* 2 Gall., 53; *Van Wyck vs. McIntosh,* 4 Kern., 439. The court erred also in allowing the defendant to amend his answer, without allowing the plaintiff a new trial as a condition of the amendment. 3 Wend., 356; 7 id., 330; 7 Wis., 211; 2 Seld., 97.

*N. S. Murphy, contra,* as to the admissibility of the evidence objected to, cited *Horner vs. Wallis,* 11 Mass., 309; *Moody vs. Rowell,* 17 Pick., 490; *Richardson vs. Newcomb,* 21 id., 315; *Hammond's case,* 2 Greenl., 33; *Lyon vs. Lyman,* 9 Conn., 55; *Young vs. Honner,* Car. & Kir., 51; 2 McLean & Rob., 536; S. C., 1 Greenl. Ev., § 449. The variance between the amount claimed by defendant in his answer, and the amount proven, was not material, as the plaintiff could not have been misled by it. Code, 77. The $80 costs were properly included, as the expense was incurred in setting aside a fraudulent judgment; but if the court should think otherwise, counsel offered to enter a *remittitur* for that sum.

*By the Court,* DIXON, C. J. Strictly speaking, the exceptions taken do not present the question, whether in case of a disputed signature the genuine signature of the same person to a paper not otherwise competent evidence in the case, is admissible to enable the court and jury, or the witnesses, by a comparison of hands, to determine or form an opinion upon the genuineness of the signature in dispute. They pre-

**[margin]** January Term, 1861.

PIERCE v. NORTHEY.

May 15.

January Term, 1861.

PIERCE
v.
NORTHEY.

sent more properly the question, whether the party denying the signature may, upon the cross-examination of witnesses who have testified that they know his handwriting and believe the signature to be genuine, lay before them papers purporting to have been signed by him, the genuineness of which is neither admitted nor denied, and ask them whether they believe the signature to be his, for the purpose of testing their knowledge of his handwriting, by the agreement or disagreement of their testimony on this point; and whether the papers thus laid before the witnesses may go to the jury in order to enable them, by a comparison of hands, to determine the question in dispute. Upon the question thus narrowed, we believe the decision of the court below is not sustained by a single authority, English or American. On the contrary, it is opposed by the adjudications of the English courts in all cases where the question has been directly made. It was made in *Griffits vs. Ivery*, 11 Adolph. & Ellis, 322, (39 E. C. L., 104), and *Hughes vs. Rogers*, 8 Mees. & Wel., 123, and it was there held that such papers were inadmissible. They were excluded on the ground that the admission of them would have the effect of raising a multiplicity of collateral issues; that it would be impossible to keep from the jury questions whether this or that paper was or was not written by the party. We find no American cases in which the question has been raised and decided. A still better reason for the exclusion would perhaps be, that if they were generally admitted, the opposite party would often be taken by surprise. He would be unprepared, in case he were disposed and able to do so, to establish either the authenticity or the falsehood of the signatures, by a comparison with which it was proposed to test the genuineness of that which was denied. And another and more cogent ground of objection would seem to be, that it would open the door to great frauds and unfairness in the selections to be made. Experiments might be tried and selections made for the very purpose of tricking and deceiving the witnesses and the jury. No better exemplification of the force and correctness of this ground of objection could be found than that furnished by the facts of the present case.

The papers offered were mere slips, having upon them the name of the party only, and these names were copied by others, from his genuine signature, by means of colored impression paper. They were, of course, fac similes of the genuine, and because the witnesses testified that they believed them to be genuine, other witnesses were introduced to show that they were not, and thus to impeach their knowledge and credibility. A more naked and wanton trick, devised to entrap and impose upon the witnesses and jury, could not well be imagined; and although it was exposed in this instance, it shows the danger of receiving such papers in evidence.

The American cases cited by the counsel for the defendant in error, go no farther than to hold that documents, the genuineness of which is admitted, or established by clear, direct and positive testimony, and which are not otherwise in evidence in the case, may be permitted to go to the jury for the purpose of comparison of handwriting. This is the rule in most of the New England states. 11 Mass., 309; 17 Pick., 490; 21 id., 315; 2 Greenl., 33; 9 Conn., 55; 21 Vt., 256; 3 N. H., 47. In other states, the mere unaided comparison of hands is inadmissible, but such testimony is received where some evidence of handwriting has been given, as corroborating testimony. 6 Whart., 284; 7 Barr, 495; 1 McMullan, 120; 2 McCord, 518. On the other hand, in England and in many of the states, a comparison of hands by juxtaposition of two writings is held to be wholly inadmissible, either as primary and sufficient or as corroborating evidence, except when the writings are of such antiquity that they cannot be proved in the ordinary way, or where the other writings, clearly proved, are already in the case and before the jury for some other purpose. *Griffits vs. Ivery*, and *Hughes vs. Rogers, supra;* 1 Crompt. & Jer., 47; 8 Vesey, 473; 4 Esp., 117; 4 Carr. & Payne, 1 (19 E. C. L., 247); 5 Barn. & Ald., 330 (7 E. C. L., 118); 9 Cow., 94; 5 Hill, 182; 1 Denio, 343; 2 Ala., 703; 5 id., 748; 1 Iredell, 16; 1 Dana, 178; 7 B. Mon., 269; 19 Ohio, 426. It is unnecessary for us in this case to express any opinion as to which of these is the better rule. That ques-

January Term, 1861.

PIERCE
v.
NORTHEY.

tion does not arise.   We may, however, be permitted to say in passing, that the reasoning in the case of *Moody vs. Rockwell*, 17 Pick., 490, and *Adams vs. Field*, 21 Vt., 256, which are the only ones in which the practice of admitting writings not otherwise competent, for the mere purpose of a comparison of hands, is attempted to be vindicated as correct in principle, seems not to reach the most obvious and strongest point of objection.   Nothing is said about the principal ground upon which the English and other cases rest, which is the multiplicity of issues which must arise and be disposed of in admitting these collateral and otherwise immaterial writings.   Neither do they speak of the danger of surprise to the other party, who may not know what papers are to be introduced, and therefore may be wholly unprepared to meet and repel the inferences attempted to be drawn from them.   After stating the English rule and remarking that it permits the court and jury to compare the contested signature with the genuine signature of the same party when the latter is properly in evidence for another purpose, Chief Justice SHAW, in the first named case, says : "But it seems to be difficult to distinguish in principle between the case of a paper admitted and proved to be genuine, given in evidence for another purpose, and a paper the genuineness of which is equally well established, when offered for this express purpose.   In both cases the result depends upon skill and judgment in making the comparison, and discovering the resemblances and differences."   Now all this may be true, and it may even be admitted that this method of enabling the court and jury to exercise their skill and judgment, is more satisfactory than that which compels them to depend upon their memory of the evidence given; and in the case of witnesses it may be said to be a surer test of their skill and experience, to allow them to have a genuine signature before them with which to institute a comparison, than to oblige them to compare a writing in respect to which they are examined, with the character of the handwriting impressed upon their minds by means of having seen the party write, or having corresponded with him, or having, in the course of business, received and examined

authentic documents executed by him; yet the consideration of these advantages does not remove the difficulties which have been suggested as being in the way of placing such genuine writings before the jury and witnesses. In the case of papers which are properly in evidence for other purposes, no such difficulties exist. As to all such it is to be presumed that the party is aware that they exist and will be produced, and if he has any objections he is supposed to come prepared to make and sustain them.

In *Adams vs. Field* but one reason formerly assigned in England for the exclusion is noticed, and that such as no longer exists, either in that country or this. It was that the jurors could not read nor write, and were therefore incompetent to compare handwriting. These cases, therefore, would seem not to furnish any very satisfactory reason for departing from the English rule.

It cannot be said that the court was wrong in allowing the defendant to give evidence for the purpose of showing that the three last described notes had been altered by inserting in them the memoranda that they had been collaterally secured by the deposit of wheat and barley with the plaintiff in error. Upon examining the complaint it appears that these memoranda are entirely omitted, although it purports to contain complete copies of the notes. Under these circumstances, the defendant's failure to deny their execution as therein alleged, cannot be construed as an admission that the stipulation with regard to the grain was embodied in them at the time they were signed. He only admitted their execution in the manner and form in which they were set out in the complaint.

The application of the defendant, made after the verdict, for leave to amend his answer, by increasing the sum for which judgment was demanded against the plaintiff upon his counter-claim, from $248 50 to $365, the amount found by the jury, should have been denied; or if allowed, it should have been upon the condition that the defendant would relinquish the verdict, pay the plaintiff's costs of the trial, and submit to a new trial. This was the rule before the Code, and the reasons for it still exist. They are that such

January Term,
1861.

amendment, without these conditions, would be improper, because the opposite party would have no opportunity of reducing the damages, which on the trial he had no occasion to do by reason of the moderate amount claimed against him. 4 Wend., 362; 7 id., 330; 2 Seld., 105. These reasons apply as well to the amount of the judgment demanded upon a counter-claim as to that claimed by the plaintiff in his complaint; for, as to such counter-claim, the defendant becomes in reality the complaining party, and is bound to state the amount of his damages as much as if he were plaintiff.

We need not consider whether the affidavits of the jurors were admissible for the purpose of showing that in their assessment of the defendant's damages, they included the costs which he had been ordered to pay as the condition of opening the judgment entered upon the warrants of attorney and allowing him to come in and answer. The parties concede that such was the case, as appears by the bill of exceptions; and for this reason, if for no other, the court should have granted the plaintiff's motion for a new trial. It cannot be claimed, under any circumstances, that costs thus unconditionally directed to be paid, can become the subject of an action against the party by whom they are received.

Judgment reversed, and a new trial awarded.