[No. 5937.]

ATCHISON, TOPEKA & SANTA FE RAILWAY CO. v. D. P. BALDWIN ET AL.

1. PLEADING—*Amendment after Trial Increasing ad damnum*—Action against a railway company for negligence in the carriage of live stock. The cause was tried upon an amended complaint laying the plaintiff's damages at less than $3500.00 Evidence was given that the number of cattle which died far exceeded the number stated in the complaint, and that the injuries to those which survived were greater than alleged; but no intimation was given at the trial that judgment would be demanded for a greater sum than alleged in the complaint. Nearly ten months after the trial and submission of the cause, plaintiffs were allowed to again amend their complaint by alleging the death of an increased number of cattle, an increase in their value over that first alleged, and an increase in the damages per head to the others, thus demanding nearly four fold the amount claimed at the trial; and upon this amendment the court gave judgment for the plaintiffs for more than $11,000. *Held*, that the amendment, if allowed at all, should have been upon terms, one of which at least should have been a new trial.

2. ——*Diligence Required*—Plaintiff should not be allowed to bring into the record by amendment, months after the trial, facts of which they were presumptively informed before and at the time of the trial—no excuse for the omission to present the matter at an earlier day being made.

3. NEW TRIAL—*Excessive Damages*—A judgment largely in excess of what, upon uncontradicted testimony, the party is entitled to will be reversed.

4. PLEADING AND EVIDENCE—*Variance*—Action against a railway company for injuries to live stock entrusted to it for carriage. The complaint attributed the death of certain cattle merely to delays in carriage. Evidence that the animals came to their death by other neglects than the alleged delay, was held incompetent to fix responsibility.

*Appeal from Denver District Court.*—Hon. JOHN I. MULLINS, Judge.

Mr. HENRY T. ROGERS, Messrs. ROGERS, ELLIS & JOHNSON and Mr. PIERPONT FULLER, for appellant.

Mr. JOHN T. BOTTOM, for appellees.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Appellees, as plaintiffs, instituted an action against appellant to recover damages in the sum of $3,387.00 claimed to have been sustained through the negligence of the defendant company in transporting cattle belonging to the plaintiffs, from Holbrook, Arizona, to Scott City, Kansas. The cattle were delivered for shipment and loaded on the cars on the eleventh day of September, 1900, and reached Scott City five days later. This action was commenced June 11th, 1902. The case was tried to the court with the result that judgment was rendered for the plaintiffs in the sum of $11,040.00, from which the defendant has appealed.

The defendant filed an answer, denying the negligence charged, and alleged that the cattle were shipped under special contracts in all respects similar to those set up in the answer of the defendant in the preceding case between the same parties, and alleged facts the purpose of which was to present the same defenses set up in that case under the contracts pleaded. To this answer the plaintiffs filed a replication similar to the one in the preceding case.

At the trial one of the issues was whether the shipment had been made under the special contracts set out in the answer or under on oral agreement. As the judgment must be reversed for a reason which in no manner involves that question of fact, or the defenses interposed under the special contracts, we shall not discuss any of these questions.

The original complaint was filed June 12, 1902, wherein it was charged that by reason of alleged negligence on the part of the defendant, seventy-eight head of the cattle died and the remainder, seven hundred and eighty, were badly damaged; and that the damages so sustained amounted to the sum of $3,387.00. On June 25th, 1903, an amended complaint was filed, which set out the acts of negligence more in detail, and alleged that because of such negligence seventy-eight head of the cattle died, and the remainder, seven hundred and eighty in number, were badly injured, and that the value of the cattle which died was $1,350, and the damages sustained by reason

of the injuries to the remainder of the shipment was the sum of $2,037.00. The case was tried and submitted to the court on the 21st day of February, 1905. Evidence was introduced on the part of the plaintiffs tending to establish that the damages sustained were much greater than originally claimed, by proving that the number of cattle which died far exceeded the number stated in the complaint, and that the damages to the remainder was more per head than therein pleaded. No intimation was given during the trial, however, that a judgment for a greater sum than that claimed would be demanded. Something like ten months after the case had been submitted to the court, and practically contemporaneous with the judgment, plaintiffs were allowed to increase the *ad damnum* nearly four-fold, by claiming damages for the death of 552 head, and alleging that the cattle which died were worth from $28.00 to $30.00 per head at Scott City; and that by reason of the injuries complained of, those living, when they reached that point, were damaged to the extent of $15.00 per head, and that the total amount of damages was $13,596.00.

Based on this amendment, the court rendered judgment for more than three times the amount originally claimed; that is, rendered judgment in the sum of $11,040.00. This was clearly error. Considerable liberality should be exercised in allowing a complaint to be amended during a trial so as to correspond with the proof bearing on the subject of the *quantum* of damages, but this should not be permitted to the evident prejudice of the defendant. The amendment in question was not offered or made until many months after the trial had closed. The *ad damnum* was not only increased, but by the amendment the averments of the complaint upon which the increase was based, were changed. The excess damages based upon the increased number of cattle claimed to have died, as charged in the complaint, as well as increasing the value per head as originally charged, from about $17.30 to between $28.00 and $30.00, and also claiming damages for the cattle injured,

but which did not die, at the rate of $15.00 per head, when in the complaint upon which the case was tried it was only alleged that they were damaged in the sum of about $2.60 per head, were not issues in the case when it was tried and submitted to the court for judgment. The defendant was thus deprived of an opportunity to controvert them, or take issue on the number of cattle which died, their value as changed by the amendment, and the extent of the injury to those which did not die, as presented by the amendment, although in a great measure the additional damages claimed by reason of the allegations made in the amendment were allowed by the court. In the circumstances of this case, the amendment, if allowed at all, should only have been upon terms, one of which, at least, should have been that plaintiffs submit to a new trial.— *Pierce v. Northey,* 14 Wis. 9; *Kenyon v. Woodward,* 16 Mich. 325; *Brewer v. Jacobs,* 22 Fed. 217.

But there is a further reason from which it appears that the amendment was improvidently allowed. When the original complaint was filed, nearly all the cattle which there is any testimony to show had died, were then dead, and had been for almost one year, while when the first amended complaint was filed, all the cattle claimed to have died had been dead for more than two years. The plaintiffs must be presumed to have know these facts when the amended complaint was filed in June, 1903, and certainly knew them when the case was on trial; so that the record discloses there was no reason presented by plaintiffs which would justify the court in permitting an amendment months after the trial had closed, and on the eve of the court pronouncing judgment.

But, waiving the act of the court in allowing the amendment at the time it did, the record discloses that in no circumstances can a judgment in the sum rendered be sustained. Evidently the court rendered judgment upon the assumption that the testimony established the death of 552 head, worth the sum of $20.00 per head. The testimony disclosed, with-

out dispute, that only 231 head of cattle died. Counsel for plaintiffs seeks to avoid this fact and maintain the judgment by claiming that under the testimony, the court might have allowed damages for the death of 231 head at the minimum price of $28.00 per head, and damages for the remainder at $15.00 per head, which would have made a total far in excess of the amount of the judgment rendered. This contention can not be upheld, for the reason that it appears from the testimony that in the spring and early summer succeeding the shipment, one of the plaintiffs saw between two and three hundred head of the cattle in the vicinity of Scott City, and stated that at that time they were in good enough condition, so that the steers sold for forty dollars per head. Besides, it seems clear that the amount of the judgment was the result of allowing for five hundred and fifty-two head, at twenty dollars per head.

Among the cattle which died were twenty-six head which, under the allegations of the complaint and the testimony, cannot be the subject of damages. Thirteen of these died September 12th, and thirteen September 14th, while in transit or in the stockyards of the defendant company. This was before La Junta was reached. According to the averments of the complaint, injury to the cattle was occasioned by delays before La Junta was reached; but the evidence establishes there was no unnecessary delay up to that point. There is evidence on the part of plaintiffs to the effect that thirteen head of the cattle were thrown down when the train rounded a curve, and that thirteen head had been injured in the pens when unloaded for feed and water, by the negligence of an employe of the defendant company; but this testimony was not competent to fix responsibility upon the defendant for the twenty-six head so injured, which, it is claimed, caused them to die, because no such claim as that was made in the complaint. The *allegata* and *probata* must correspond.

The judgment of the district court is reversed and the cause remanded for a new trial. On proper application the

parties should be permitted to amend their pleadings as they may be advised.     *Reversed and Remanded.*

Decision *en banc.*

Mr. JUSTICE MUSSER, Mr. JUSTICE WHITE and Mr. JUS-TICE HILL dissent.

Mr. JUSTICE HILL dissenting:

I cannot agree with the majority opinion in this case. The able counsel for appellant has not attempted to cite a single case, from this court, to the effect that the amendment allowed was improper, or that judgment should not have been entered thereon; in face of the fact that counsel gave no reason to the trial court for their objections to the allowance of this amendment, or claimed surprise, or asked leave to answer it, or to be allowed further time within which to meet it, or within which to offer proof in rebuttal to that already submitted by the plaintiff, showing the increased amount of the *ad damnum,* or that it be allowed upon terms, and suggesting them, which, if made, would unquestionably have been allowed. In the absence of any such requests or indications of any kind as to any desire to have anything done, or to do anything other than making the bare objection, which was evidently done solely and entirely for the purpose of securing a reversal in this court, under this state of the record, the amendment being eminently proper under the provisions of our code and being sustained by former decisions of this court, as I view it, there was nothing left for the trial court to do, but to grant it, and enter its findings and judgment upon the pleadings as they then stood, and as the facts had been established.

The majority opinion recognizes the right and justness of this amendment and expressly states that on proper application the parties should be permitted to amend their pleadings as they may be advised, which certainly means hereafter, and, as it appears to me, it would be just as consistent for the

defendant to urge, when the case again comes up for a new trial, that the plaintiffs had no right to amend, for which reason, without giving any reason, it would again refuse to do anything further than bring it here and rely upon this technical error for the purposes of again securing a new trial. There is no reason that I can see, had defendant desired, why it could not have asked and secured time when the amendment was allowed, within which to present any defense thereto, if any it had, other than that of delay. As I understand it the case now goes back for a new trial, and this same defense has to be met; I think it should have been met at that time, and could just as well have been met at the former trial as hereafter.

Courts are created for the purpose of trying the real merits of contentions which, unfortunately, do and probably always will arise between citizens, but not for the purpose of preventing the disposition of such contentions through the practice of technicalities. Counsel for the appellant are of such recognized ability that they need no aid or suggestions from any trial court in order to protect the rights of their clients in any litigation, and if there was any reason why this amendment should not have been allowed, it was their duty to have embodied that fact in their objections to it, when made. But, as the record discloses, the only reason given is "objection by defendant." After the granting of the motion to amend, the exception reads, as follows, "to the granting of which leave and the filing of which amendment, the defendant, by its counsel, then and there duly objected and excepted." A new trial was not requested at the time this amendment was allowed or any time not even after the judgment was rendered. Under these circumstances, I do not think it was prejudicial error in allowing this amendment to be filed, and in the entering of the judgment, and there has been no case of this court cited in the majority opinion so holding. By the amendment, no new cause of action was stated; a recovery had without the amendment would be a bar

to another action upon the facts stated in the amendment.—
*Messenger* v. *Northcutt,* 26 Colo. 527.   The same evidence
would support the damages, except as to the amount, with or
without the amendment, and the same measure of damages is
applicable in both instances.   Under this state of the record
is the opinion of the majority in harmony with the former
rulings of this court upon this subject, and when tested by our
code provisions and former decisions did the trial court com-
mit prejudicial error in allowing this amendment?   I do
not think so.

In the case of *Good et al. v. Martin,* 1 Colo. 406, this
court said:

"The power of courts to allow pleadings to be amended
is pretty well established, and certainly cannot be denied at
this day.   *   *   *

Authorities to support the action of the court below in
allowing the *ad damnum* to be increased are not wanting.
*   *   *   If a new cause for action or substantive fact should
be added to the declaration by amendment, the right of the
defendant to meet the new case with a new defense would
seem to be unquestionable.   In this case, however, the amend-
ment introduced no new fact into the declaration.   The facts
upon which appellant's liability was founded were set out in
the declaration as originally framed, and appellee did nothing
more than to increase the amount of her demand upon those
facts.   Appellants were as well informed of the nature of the
action against them before the amendment as afterward, and
it is difficult to see upon what ground the claim to change
the defense, after the amendment, can rest.   At all events, in
the absence of any showing as to the necessity for making a
new defense after the amendment, the granting or refusing
leave to plead anew was in the discretion of the court below,
of which appellants cannot complain in this court."

In *Sellars et al. v. Clelland et al.,* 2 Colo. 532, this court
said:

"Amendments may be made in the complaint with the leave of the court after trial begun, if the amendment does not add a new cause of action so as to injure the defendants."

In the case of *Lebanon M. Co. v. Con. Rep. M. Co.*, 6 Colo. at page 373, this court said:

"A liberal allowance of amendments to the pleadings, in cases of this nature, due regard being had for the rights of each party litigant, would often conduce to the furtherance of justice. It is probable that most of the rejected testimony would have been adjudged admissible by the court below, under the amended complaint, if the filing of the same had been permitted. It is of the highest importance in trials involving the determination of valuable rights, that the pleadings of the parties should be formal and sufficient, so as to present the substantial issues to be tried. The legislature has made ample provision for the making of necessary amendments to all pleadings, vesting the authority for its exercise in the presiding judge, and the best interests of suitors will be advanced and much valuable time saved by a generous but wise exercise of the discretion."

Since the rendition of these decisions our present code of 1887 was adopted. Section 75 thereof reads, in part, as follows:

"The court may, on motion, in furtherance of justice and on such terms as may be proper, amend any pleading or proceeding, adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, and may, upon like terms, enlarge the time for an answer, replication or demurrer. The court may likewise, upon affidavit showing good cause therefor, after notice to the adverse party, allow, upon such terms as may be just, an amendment to any pleading or proceeding in any other particular."

Since the adoption of the code of 1887, in *Saint v. Guerrerio*, 17 Colo. at page 450, in commenting upon this subject, this court said:

"The power to allow amendments is necessarily intrusted, in a large degree, to the discretion of the trial court, and should be liberally exercised in furtherance of justice. Code, sec. 75."

In *Miller v. Thorpe,* 4 Colo. App. at page 561, it is said:

"The appellants are quite right in their claim that the power which the code gives to the court to permit amendments should be broadly and generously exercised to further the interests and protect the rights of litigants."

In the case of *Davis v. Johnson,* 4 Colo. App. at page 550, where the amendment was granted after the submission of the evidence, the court said:

"It is further objected that the amendment was permitted without cause shown. It is recited in defendant Johnson's bill of exceptions that after the conclusion of the testimony, and after argument by counsel, the court, without any cause shown, granted leave to the plaintiff to amend his complaint so as to conform with the proof adduced at the trial, with leave to the defendants to answer should a new cause of action be stated in the amendment. In support of this objection counsel rely upon section 78 of the civil code. That section provides that the court shall in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the parties, and that no judgment shall be reversed or affected by reason of such error or defect; and that, if, upon the trial of an action before the court or jury, the evidence shall vary from the allegations of the pleadings, and either party is surprised thereby, he shall be allowed, on motion, and showing cause therefor, and on such terms as the court may prescribe, to amend his pleadings to conform to the proofs. Technically, in such a case, cause should be shown; but in this instance it was not required by the court. The amendment was not resisted on the ground that cause was not shown, and the court perhaps deemed the cause sufficiently apparent without a formal showing. The granting of leave to amend is within

the sound discretion of the court, which should be exercised liberally in the interests of justice, and, unless in consequence of its exercise, some disadvantage has resulted to the adverse party, the decision is no ground for a reversal."

In the case of *Harris v. Harris*, 9 Colo. App. at page 216, it is said: "And by the code the power to amend continues until after the evidence is concluded, enabling a party to make his pleadings conform to the facts proved."

In the case of *Johnson v. Johnson*, 30 Colo. page 402, it was held that the court has authority to grant leave to amend any pleading or proceeding in any cause, before final judgment, so long as it retains jurisdiction of the cause, in which case the amendment was allowed after the return of the verdict of the jury. This ruling was affirmed by this court.

In the case of *Jordan et al. v. Grieg*, 33 Colo. 360, it was held, where, after hearing the evidence, the court, upon motion of plaintiff reopened the case for the hearing of further testimony, and continued it until the next term, and the court further ordered that the plaintiff be allowed to file an amended complaint based upon the evidence heard, that it was not error to allow such amendment without a motion and affidavit showing good cause therefor; that the allowance of the amendment was within the sound discretion of the court and where the adverse party was not prejudiced and is given ample opportunity to meet its allegations the allowance of such amendment was not grounds for reversal.

In the case of *Klippel et al. v. Oppenstein*, 8 Colo. App. 187, it was held that the granting or refusing of amendments to pleadings rests almost entirely in the discretion of the trial court, and will not be reversed unless there was an abuse of discretion and injustice done. Practically the same language is used in the case of *Cascade Ice Company v. Water Company*, 23 Colo. 292. To the same effect is, *Buno v. Gomer*, 3 Colo. App. 456; *Hyman v. The Jockey Club etc. Co.*, 9 Colo. App. 299; *Gambrill et al. v. The Brown Hotel Co.*, 11 Colo. App. 529.

In addition to the above, as I view it, the trial court is also sustained by the following cases.— *Buddee v. Spangler,* 12 Colo. 216; *Horn v.. Reitler,* 15 Colo. 316; *Wilcox v. Savings Bank,* 21 Colo. 348; *Tanner v. Harper,* 32 Colo. 156; *King v. Mecklenburg,* 17 Colo. App. 312.

It is further stated in the majority opinion as a reason why the last amendment should not have been granted that by it the *ad damnum* was not only increased, but the averments of the complaint upon which the increase was based were changed; that the excess damages are based upon the increase number of cattle claimed to have died as charged in the complaint, as well as increasing the value per head, as originally charged, and also in claiming damages for the cattle injured, but which did not die, for which reasons the opinion concludes that these matters were not issues in the case when it was tried, or when submitted to the court for judgment; that the defendant was thus deprived of an opportunity to controvert them or take issue on the number of cattle which died, their value as changed by the amendment, and the extent of the injury for those which did not die, as presented by the amendment; for these reasons it is stated, the amendment, if allowed at all, should only have been upon terms, one of which at least should have been that the plaintiff submit to a new trial. As previously stated, the defendant should not have been granted something which it did not ask for. At no time in the proceedings of this case is it disclosed by the record that the defendant asked for a new trial, not even after the final judgment was rendered. From this record it is quite evident that a new trial is what it did not want. To my mind it is very evident that that is the one thing that the defendant was fighting at all times to evade, to-wit, a trial upon the merits, but I cannot agree with the conclusion that the amendment in any manner changed the issues or presented a new cause of action. The complaint as it stood when the evidence was admitted, after stating the acts which caused the damage, among other things, alleged, that by rea-

son of the negligence on the part of the defendant company, its wrongful acts, etc., seventy-eight head of said cattle died, the remainder, seven hundred eighty, without a single exception, were badly injured and damaged; that by reason of said negligence and wrongful acts, etc., plaintiffs were damaged in the sum of $3,387. The evidence disclosed that a much greater number had died than was alleged in this complaint. Likewise, that the damage to those which survived the result of this treatment was greatly in excess of what was originally anticipated. This evidence was before the court. The defendant had a right to meet it, but it saw fit to offer no evidence at all, and if the precedents heretofore established in this court are to be upheld, starting with the case of *Good et al. v. Martin,* 1 Colo. 406, where it is said, "the amendment introduced no new fact into the declaration. The facts upon which appellant's liability was founded were set out in the declaration as originally framed, and appellee did nothing more than to increase the amount of her demand upon those facts," it follows that the same rule should be applied here. It was not necessary for the plaintiffs to allege and they did not attempt, in their complaint, to state the particular damage for the death of each particular animal, or the particular damage to each of the residue. The allegation of the aggregate amount of the damage for both the dead and to the cattle living, was sufficient to allow all proof which tended to show the extent of this damage, and when it was shown to have been greater than originally anticipated it was proper to allow the amendment increasing the amount of the *ad damnum,* as heretofore repeatedly held by this court. As I view it, the plaintiffs had the right to show the extent of their damage as the result of the actions of the defendant, whether the animal was alive or dead, and as the defendant expressed no desire to be allowed any further time to present its evidence upon the number which had died, the value thereof, the damage to the remainder, etc., or at all, it should not now be heard to complain.

I see nothing in the contention that the amendment was improvidently allowed for the reason that nearly all the cattle which the evidence shows had died were dead at the time of the filing of the first amended complaint. The opinion assumes that the plaintiffs must be presumed to have known these facts when this complaint was filed, or when the case was on trial. It then concludes that as the record discloses there was no reason presented by plaintiffs which would justify the court in permitting an amendment after the trial had closed, it should not have done so. My views are, that the allegation of the last amended complaint, that a greater number had died than had previously been stated, was immaterial upon the matter of evidence in showing the extent of the plaintiffs' damage. As I gather from the record, the plaintiffs were not residents of Kansas; but of Indiana and Arizona; they were men of large interests in different sections of the country, and in the absence of a showing to the contrary it ought not to be presumed by this court that they were at all times advised as to the condition of this stock in Kansas. Likewise, it should not be presumed against them without a showing that there could not have been a mistake between them and counsel, through their agents or otherwise, whereby some statements in the complaint might have been made through inadvertence or mistake, and certainly as to immaterial ones; in any event these were matters exclusively within the province and discretion of the trial court, as stated in previous cases of this court, heretofore cited, when the evidence was in, the court, in its discretion therefrom, has the right to grant amendments without any further showing. For which reasons, under the facts of this case, in my opinion, the allowance of this amendment and the entering of the judgment thereon was not an abuse of discretion. Under the provisions of our code and the rules announced in the foregoing authorities from this state, it appears to me we have heretofore had one rule for all such matters announced repeatedly, and I see no reason why another should be applied

in this case, or for making it an exception to the rule heretofore followed.

I also disagree with the majority opinion in its conclusion that the amount of the judgment was not proper. The evidence is overwhelming to the many acts of negligence which caused the damage. This is not seriously disputed. To my mind the record does not establish that the court rendered judgment upon the assumption that the testimony established the death of five hundred fifty-two head, worth the sum of $20 per head. The trial court did not so state, and the record does not disclose that he rendered his judgment upon the basis of damage for only those which had died. The defendant did not see fit to introduce any evidence, hence the test is whether the record discloses evidence sufficient to sustain the findings. I think when considered in its entirety, it is sufficient for this purpose.

Mr. Harper, who accompanied the cattle, testified that he had intended purchasing them, to be delivered to him in Kansas; that there were eight hundred fifty-eight head; that he had had much experience in taking care of cattle on trains; that the condition of these cattle when loaded at Holbrook, Arizona, was good; that twenty-six head died before reaching La Junta; that about one-half of them were down before they reached Scott City; that he did not buy the cattle for the reason they were not in a fit condition to buy; that he could not handle them; that when unloaded at Scott City there were fifty-four more that were dead and down, which they could not do anything with at all, and others were crippled up; that they did not seem to eat or drink; that they were not in a fit condition to sell or do anything with whatever; that others died within the next few days. Then follows the portion of this testimony from which it is assumed that only two hundred thirty-one head in all died, he was asked, "Have you any memorandum that you made at the time by which you can tell just how many of these cattle died at different times?" He commenced to answer as follows, "Yes sir, September

'12th, thirteen cows; September 14th, thirteen cows; September 20th, thirty-five cows and one steer and between September 20th and October 1st, sixteen head, and between that and November 24th—" Counsel for defendant then interposed an objection as follows: "Objected to as getting too remote from the time of delivery." Counsel for the plaintiffs then said, "You may state, over the objection of counsel for defendant, the number of cattle that died, up to November 25th." The witness then continued, as follows, "fourteen cows; December 15th, two cows; and from December to March 1st, 1901, twenty-five cows; March 1st to May 8th, thirty-two heifers and steers; May 8th to 13th, thirty-nine steers; May 13th and 14th, five steers, and then from May 14th to June 15th thirty-six head, making a total all told of five hundred fifty-two head." While it is true that the total of this specific list as given does not tally anywhere near five hundred fifty-two head, this witness did thus make the statement that the total dead was that number, and whether through the interruption of counsel in giving his detailed list he thereby omitted portions of it, or overlooked it, or whether he was wrong in his calculation of the total, does not appear from the record. This evidence was by deposition. The witness further testified that he knew the value of such property at that time, and that had these cattle been transported without these delays, etc., in his judgment, they would have been worth from $28 to $30 per head, and that was what he could have got for them, but that in their then present condition they were worth just what a man could get for them, and the best offer he could get was $15; that there were a few cows that were, apparently, in fair condition; that did not seem to be bruised or hurt, and that he was offered $30 for five hundred if they were all like them, but that there were not to exceed fifty head of this kind, and that, in his judgment, the cattle were not worth to exceed $15 per head at the time they were delivered in Scott City, Kansas; that in his judgment

there was not over one-third of the cattle which recovered from the effect of these delays, etc.

Mr. C. O. Howe, one of the plaintiffs, testified to his knowledge of values and that the value of these cattle at Scott City, Kansas, had they been delivered there within the usual time required, when properly fed and watered, would have been from $25 to $28 per head. While Mr. Harper, a disinterested witness, gave the value at $28 to $30 per head, so that assuming that only one hundred thirty-one head had died, as contended for by the appellant, at $28 per head, this would have made $6,268; this left six hundred twenty-seven head, which the undisputed testimony shows were, in their then condition, not worth over $15 per head, or were damaged to the extent of $13 per head, a total of $8,151; add to this the $6,268 for those which died, as admitted by the company, and we have a total of $14,419 clearly established by the evidence, and still a greater amount by the testimony of Mr. Harper; yet the court only gave judgment for $11,040, nearly $3,000 less than he could have done, and yet been within the limits of undisputed testimony. I think where there is competent evidence to thus sustain the findings of the trial court it is proper to assume that he based his judgment upon such findings, instead of assuming that it was upon another theory, which is not so clearly sustained. To assume that the judgment is based solely for the damage occasioned by the death of a certain number is to entirely disregard the evidence of the damage to those which survived this treatment, and some of which ultimately recovered. This evidence was both competent and material, and I find no support in any authorities cited for disregarding it. Again, to assume that the judgment was based upon the death of five hundred fifty-two cattle at $20 per head is to assume that the court arbitrarily fixed the damage at $20 per head, when there is no evidence that this was the amount of damage for each; no witness so testified or even estimated it at that amount. The

minimum of any witness for animals which had died was $25 per head.

The fact that Mr. C. O. Howe testified that during the next spring and summer following they sold some of them for $40 per head, is no evidence that they were not damaged in September to the extent testified to by Mr. Harper. This Mr. Howe did not see these cattle in Kansas during the fall or winter, and he stated that he knew nothing about their condition at that time, and did not pretend to state the condition they were then in; all he knew about it was from his examination of the hides of those which had died, and his personal observation of those still living, when examined by him during the following spring and summer.

The evidence discloses that the plaintiffs lost the sale of them at that time upon account of their injuries, and that they were put to a large expense in keeping them over the fall, winter and spring, and also in getting any of them fit for a market during the coming season, and I am unable to appreciate the correctness of the majority opinion in this respect, when it states that there was no damage to those living for the reason that some of the steers were in good enough condition so that they sold for $40 per head during the following spring and summer. As I view it, the test was the damage to these cattle at the time of this shipment, and the result thereof. The evidence was clear, convincing, and undisputed, upon this question, and I think should have been given the weight to which it was entitled.

I am also of the opinion that the loss of the twenty-six head which died upon September 12th and 13th while in transit or in the stock yards of the defendant company before La Junta was reached, is proper to be considered in fixing the measure of damages. I also disagree with the statement that the evidence fails to establish that there was no unnecessary delays up to that point.

The complaint specifically alleges these delays, likewise allowing them to stand in the cars at different stations for

certain lengths of time, the company's negligence in failing to unload until men were furnished by the plaintiffs, and the negligence of the employees of the company in unloading. The allegations in the complaint on this subject are, 'that the plaintiffs, on September 11th, loaded said eight hundred fifty-eight head of cattle at Holbrook, Arizona, and started; that on the same date, at Gallup, they were wrongfully and negligently detained from 8:50 until 10:45 p. m.; that at said place the company put in nineteen cars ahead of the cars containing the cattle of the plaintiffs, over the protests of plaintiffs; that said cattle were wrongfully and negligently delayed at Laguma forty-five minutes, and did not reach the stock yards at Albuquerque until the hour of 9 o'clock on the morning of September the 12th; that by reason of the negligence of the defendant the cattle were not unloaded at Albuquerque until 11:45 a. m. of said day; that said cattle were reloaded at Albuquerque at 2:30 in the afternoon of September 13th; that after being loaded they were left upon the tracks at Albuquerque until 3:20 p. m. and arrived at Raton at 8:30 on the morning of September 14th; that by reason of the negligence of the defendant company in not having men at hand to unload said cattle they were not unloaded until noon of that day, and then not until the plaintiffs, through their representatives in charge, furnished men to do the unloading; that said cattle were reloaded at Raton, N. M., at 7:35 on the morning of September 15th.' A Mr. Harper, who had intended buying the cattle when they reached Kansas and who accompanied them on the trip, testified that there was a delay at Gallup, N. M., from 8:50 to 11:40 p. m., at which place they cut out a car to fix, that was broken, and before they set it back they put in three cars of horses and two box cars between us (meaning the caboose) and the cars that they took out; that they also put on about nineteen empty cars ahead; that he thought they had a full train without any cars and that he forbade them to put these cars on; that they unloaded and fed at Albuquerque at 11:45 a. m.; that they reloaded there at 2:30 p.

m. the next day and pulled up to the depot, and were then held there until 3:20 p. m.; got into Raton, N. M., at 8:30 the 14th; that before they got to Raton they were having slow time, and the cattle were considerably mixed; that the cattle were in good condition when they were loaded at Holbrook, Arizona; that he was a cattle man with a large experience; that he thought the cause of the death of the thirteen on September the 12th was occasioned by their unloading at Albuquerque; that he did not think that they were handled as they should have been; that he knew this to some extent; that he protested against the treatment the cattle received in the yards at Albuquerque;; that in his opinion the death of the other thirteen upon September 14th was due to the run between Albuquerque and Raton; that while they had a very good run between Raton and La Junta, but between Albuquerque and Raton he did not think you could call that a very good run; that they made a curve some place between Albuquerque and Raton; that in making it a number of cattle were knocked down; that they could not get them up; *that he would say the cause of the death of these twenty-six was the run and the way they were handled in the yard.*

It will be observed that this testimony had reference to conditions prior to reaching La Junta. It was also shown that cattle stand such trips better when the cars are kept running than when they stand still. Certainly, testimony upon these subjects was competent to sustain the allegations of the complaint, and to fix the responsibility upon the defendant for the loss of the twenty-six head, which acts of the defendant it is claimed caused them to die. Under this pleading, supported by this line of evidence, I am unable to find any justification for the rejection of the claim for the twenty-six head which died prior to reaching La Junta and I think it is beyond, even any technical rule, when applied to these facts, to hold that in this respect the *allegata* and *probata* did not correspond.

Decided July 3, A. D. 1911. Rehearing denied December 9, A. D. 1912.