## THE STATE OF CONNECTICUT *against* WATKINS.

9    47
64   334
9    47
72   113

A witness having testified, on the trial of an indictment for murder, that on the evening preceding the alleged murder, the prisoner was at a certain house, and said, that he was going thence to *B's* ; and other witnesses testified, that he came home, that evening, at about 8 o'clock. After the evidence was closed on both sides, one of the jurors, addressing the public prosecutor, said, " We must have *B.* here, and you must bring him here ;" and the next morning, the cause being still on trial, the same juror made application to the court, publicly, to the same effect. The prisoner being found guilty, and a motion in arrest of judgment being made, on the ground of these facts, it was held, that they were insufficient.

Where the public prosecutor, on the trial of an indictment for the murder of the prisoner's wife, in the absence of direct evidence of the alleged murder, offered, with other presumptive evidence, testimony to prove, that for some months before and down to the time of the alleged murder, an adulterous intercourse subsisted between the prisoner and a Mrs. *B.* ; it was held, that such testimony was admissible, not to prove the *corpus delicti,* but to repel the presumption of innocence arising from the conjugal relation.

This was an indictment for the murder of the prisoner's wife, *Roxana Watkins* ; to which he pleaded *Not guilty.*

The cause was tried at *Brooklyn, October* term, 1830, before *Williams,* J., assisted by *Bissell,* J.

No direct evidence of the murder was offered ; but the evidence given was wholly circumstantial or presumptive. In the course of the trial, the public prosecutor offered testimony to prove, that for some months before and down to the time of the alleged murder, an adulterous intercourse subsisted between the prisoner and one *Waity Burgess* ; and that she was a woman of lewd character. The counsel for the prisoner objected to the admission of this testimony. The court admitted proof of the adulterous intercourse between the prisoner and Mrs. *Burgess*, not as evidence of the murder, but to repel the presumption arising from the circumstance that the prisoner

was the husband of the deceased, and to show a motive for the commission of the offence : and the court excluded the evidence as to the character of Mrs. *Burgess.*

The jury found the prisoner *Guilty ;* and thereupon, he moved in arrest of judgment, stating sundry grounds. The only facts found by the court, are the following. In the progress of the trial, one *Orrin Burgess* testified, that on the evening preceding the night of the alleged murder, the prisoner was at the house of Mrs. *Burgess,* and said, that he was going thence to *Sterry Bennett's.* The other witnesses testified, that he came home about 8 o'clock. After the evidence was closed on both sides, and while the audience were retiring, *John C. Howard,* one of the jurors, in a low voice, but so as to be heard by the clerk of the court, addressing the public prosecutor, said, " We must have *Sterry Bennett* here ; and you must bring him here." The next morning, the cause being still on trial, the same juror made application, publicly, to the presiding judge to the same effect. The counsel for the prisoner then interfered ; and, the state's attorney having sent for *Bennett,* no farther proceedings were had relative to this matter. The court adjudged these facts insufficient to warrant an arrest of judgment ; and therefore overruled the motion.

The questions arising on these decisions of the court, were reserved, on a motion, by the prisoner, for a new trial.

*Goddard* and *J. W. Huntington,* in support of the motion, contended, 1. That the communication of the juror to the state's attorney, while the cause was on trial, was a sufficient ground of arrest. In the first place, it was a breach of duty, on the part of the juror, and a violation of his oath, as the remarks related to the merits of the cause, and were addressed not to his fellow jurors, but to a party. Secondly, the communication was material, as it in effect informed the state's attorney where the case laboured with the jury, and what further evidence was wanted to effect a conviction. This would not be permitted in a civil suit ; much less in a criminal prosecution, and that for a capital offence. 1 *Chitt. Crim. Law,* 516. As in this state, the jury are allowed to separate during the trial, there are peculiar reasons here why their conduct should be strictly guarded. It is not necessary that any *actual prejudice* should have resulted to either party, from the misconduct complained of.

2. That evidence of an adulterous intercourse between the prisoner and *Waity Burgess,* was inadmissible on this issue, as it did not conduce to shew that he murdered his wife. The court permitted it to go to the jury as competent evidence for two purposes ; so that if it was inadmissible for either of those purposes, a new trial is to be granted.

*Windham,*
July 1831,

The State
*v.*
Watkins.

The first purpose for which the evidence in question was admitted, was to repel the presumption of innocence arising from the conjugal relation between the prisoner and the deceased. Let it be borne in mind, that this was not introduced to meet and counteract *any evidence* given by the prisoner ; but simply to rebut a presumption of innocence. This can be done only by evidence which shews *guilt—i. e.* the guilt in issue. The question then comes to this, whether adultery is evidence of murder ; a question requiring no discussion. The court, indeed, said, at the time, that they did not admit it for this purpose ; but did they not do so in effect ? Could the presumption of innocence be otherwise rebutted ? Is the presumption of innocence arising from the conjugal relation, different, in its nature, from that which the law raises in every case ; so that evidence is admissible to rebut the one, which is not admissible to rebut the other ?

The second purpose for which the evidence was admitted, was, to shew a motive in the prisoner for the commission of the crime charged. No evidence had been introduced connecting the adulterous intercourse with such crime. It does not appear that the prisoner's wife was at all in the way of his intercourse with Mrs. *Burgess.* If it be said, that such intercourse showed an alienation of affection from his wife, admit it ; but does this shew a motive in him to murder her ?

If this evidence had any relevancy, it conduced to prove the *corpus delicti*—a purpose disavowed by the court, and clearly not sanctioned by law. Such, at any rate, under the circumstances of this case, would be its effect with the jury. The prisoner, throughout his trial, admitted, or did not deny, that if his wife was murdered by any one, it was done by him. Not a suspicion rested upon any other person. The sole question was *how* Mrs. *Watkins* came to her death ? Now, was the prisoner's connexion with Mrs. *Burgess* proper evidence to show the character and circumstances of Mrs. *Watkins'* death ? Yet such would be, and must be, its effect, if it had any bearing on the case.

*Windham,*
*July 1831.*

The State
*v.*
Watkins.

*H. Strong* and *Judson,* contra, insisted, 1. That the motion in arrest was properly overruled.   In the first place, the conduct of the juror was not a violation of his oath—*i. e.* the oath for petit-jurors in criminal causes—either in its letter or spirit. *Stat.* 364. *tit.* 72. *s.* 6.   Secondly, the conduct of the juror evinced no  prejudice against the  prisoner,  or improper bias. He simply addressed the public prosecutor, whose duty it was to bring forward all the witnesses acquainted with the transaction, expressing a  desire to hear what a particular individual, who, it appeared, might know something material, would testify.   Whether the juror supposed this testimony would be *for* or *against* the prisoner, does not appear ; nor is there any ground to infer, that he had  any expectation, much less any wish, on the subject, except that the whole truth should be brought to light.   Thirdly, no injustice or abuse resulted from the juror's conduct ;—nothing  tending  to  deprive  the prisoner of a fair trial.   *Horton* v. *Horton,* 2 *Cowen* 589.   *Smith* v. *Thompson,* 1 *Cowen,* 221.   1 *Swift's Dig.* 775.

2. That the evidence of adulterous intercourse, was properly admitted.   And here it may be remarked, that the evidence was, in strictness, admitted for but one purpose ; the alternative phraseology used by the court denoting the same thing in different  forms  of  expression.   The conjugal relation subsisting between the prisoner and the deceased, created a *natural* presumption of  innocence, in  contradiction to the *legal* presumption of innocence which exists in every case ; it being  a matter of *fact,* established by the common experience of mankind, that a husband, instead of murdering his wife, will protect and defend her.   This fact, if not repelled, will be entitled to great consideration with the  jury.   But there may be circumstances in the case inconsistent with the fact presumed, and  which  go  to  rebut it ; and if  such circumstances exist, why may they not be  shewn ?   Is the trial a fair one, where they are excluded ?   In criminal prosecutions, motive and total want of motive, are always subjects of inquiry.   From the connexion between  a man's conduct and  his motives, ascertained by experience, the jury are enabled first to infer a man's motives from his acts, and then to infer what his conduct was, from  the motive by which  he appeared  to be  influenced.   1 *Stark. Ev.* 491.   In this case, the prisoner might have shewn a want of motive, by evidence that he and his wife had always lived  in harmony and affection.   Might not such evidence be

repelled, by proof of discord and hatred ?    The proof in question was of the same nature.    It shewed forcibly an alienation of affection.    It shewed more.    The prisoner's wife stood as a barrier between him and the gratification of his adulterous propensity.    The death of the wife would remove that barrier.    Is there not here a motive for the commission of the crime charged ?—Suppose the deceased was one on whose life the prisoner's whole support depended.    Might not this be shewn in his defence ?    Suppose, then, that the prisoner was to gain a large estate, by the death of that person.    Might not this be shewn, with equal propriety, against him ?—In the case of *George Swearingen*, in *Maryland*, tried for the murder of his wife, evidence of illicit intercourse between him and a celebrated courtezan, was admitted, to shew his guilt ; and he was convicted and executed. (*a*)

Hosmer, Ch. J.    1. Whether the judgment ought to be arrested, is the first enquiry in the case.

The ground of the motion in arrest, is, misbehaviour in the juror ; and as a consequence, that the judgment ought to be arrested.

First, as to the supposed misbehaviour.    If it deserve this appellation, it, at most, was small and little reprehensible.    It is a fair presumption, that unacquainted with courts, and the precise demeanor there to be observed, the juror was unconscious of any impropriety in making his request of the public prosecutor.    This is clearly apparent, from the public application made by him to the court, in the name of the jury collectively.    That it was not considered as a misbehaviour, in the time of it, is a fair presumption, not only from the silence of the court, but of the counsel for the prisoner.    It was no violation of the juror's oath ; and if it can be termed misconduct, it must be in a very mitigated sense.    If it was not prejudicial to one of the parties, or indicative of some partiality or prejudice, creating a disqualification for the performance of the juror's duty, it ought not to annul the verdict.    Ex-parte *Hill*, 3 *Cowen*, 355.    *The People* v. *Douglass*, 4 *Cowen* 26. 33. *Smith* v. *Thompson*, 1 *Cowen* 221.    No application was made, by the counsel for the prisoner, to censure or remove the ju-

(*a*) The state's attorney read a note of the case referred to, communicated by *James Dixon*, Esq.

ror ; and if it had been, it must have been to quash the pannel, as the request was made in the hearing of the jury, in their collective name.

No prejudice arose to the prisoner, unless from the partiality of the juror against him ; and of this, there is neither evidence nor presumption. His precise motive for the request made, is not known. It is remotely possible, that he was desirous of testimony to convict the prisoner ; but in the exercise of common candour, it cannot be presumed. On the contrary, it is a reasonable and probable presumption, that *Howard,* and the jury generally, in whose hands was the fate of the prisoner, intensely feeling the unpleasantness of their situation, were anxious, that the cause should be sifted to the bottom, in order the more satisfactorily to their own minds, to do public justice.

From the conduct of the juror no inference arises, that he was unfavourable to the prisoner, or was influenced by any other motive, than the honest purpose of discharging his duty impartially.

I have no doubt, that there is not any cause existing, for the arrest of the judgment.

2. Ought there to be a new trial ? This is the remaining subject of consideration.

It appears, that no direct evidence of the alleged murder was offered, but that on this head, the testimony was presumptive only. In the progress of the trial, the court admitted evidence, tending to prove, that for some months previous to the alledged murder, down to the time of its perpetration, an adulterous intercourse had subsisted between the prisoner and a Mrs. *Burgess.* The evidence was received, not to prove the *corpus delicti,* but to repel the presumption arising in favour of the prisoner, from the marital relation, and to show a motive for the commission of the supposed offence.

The cause on trial involved three inquiries, to wit, whether the deceased was killed by some person ; whether that person was the prisoner ; and if he was, whether the act was done of malice aforethought.

It was a prominent fact in the case, that the deceased was the *wife* of the prisoner. The presumption thence arising, that she was not killed by her husband, or that it was not of malice aforethought, was powerful. The relation of husband and wife, clearly implies a strong partiality, on the part of the husband, towards his wife, and the most ardent desire to pro-

tect her, and to render her happy.   As a man will consult his <span>*Windham,*<br>July, 1831.</span>
own preservation and pursue his own interest ;   so, as a gene-
ral truth, he will equally regard the protection and interest of      State
his wife.   The motive, for the most part, is both powerful and    Watkins.
*v.*
unintermitting ; and that man must be truly unfortunate, whose
experience and feelings do not attest this unquestionable truth.
Ought not, then, the strong presumption arising from the pris-
oner's relation to the deceased, and the probable motives from
this source, influencing his conduct, to be refuted, if capable of
refutation ? Of this, I think, there can be no question.   For it
is a universal rule of evidence, that all facts and circumstan-
ces, upon which reasonable presumption or inference can be
founded, as to the truth of the issue or disputed fact, are ad-
missible in evidence.   And if the fact consist of parts, or is
proveable by many circumstances, each of which conduces
something to the establishment of it, then each part, and each
circumstance, is admissible, although the point will not be es-
tablished, until the whole fact is proved.   The weight of the
testimony is within the province of the jury ; but if it have any
weight, the court must receive it.   *Gibson* v. *Hunter*, in err.
2 *H. Bla.* 288.

The testimony received, was in proof of an adulterous in-
tercourse between the prisoner and Mrs. *Burgess.*   That such
evidence effectually repelled the presumption arising from the
marital relation, and ought to deprive the prisoner of the ben-
efit of it, is unquestionably clear.   It was the proof of habitual
adultery ; and adultery thus committed, affords most power-
ful presumptive evidence, to show a complete alienation of af-
fection, and a heart hardened against the calls of every connu-
bial duty.   It indicates a state of mind, from which no desire
of protecting the wife is presumable ;   and no restraint of the
passions.   Love extinguished by adultery, a common, if not
infallible result, not unfrequently, it is presumable, gives way
to hatred, and a desire to be free from the burden of a wife,
who no longer is the object of regard.   If a person were to
declare, that he *hated* his wife ; should he be protected by the
presumption, that he loves her ? So if he threaten to *kill* her ;
shall this be excluded, by a presumption arising out of the
marital relation that has ceased to exist ? Certainly not.   The
proof alluded to would not establish the position, if the wife
were killed, that her husband perpetrated the act, or that it
was of malice aforethought ;   but the presumption created by

the marital relation would be repelled, and a weight be given to the other proof in the case, which it would not otherwise possess.

As to the interminability of such enquiries, there is nothing in the objection. They will always terminate precisely where they should, that is, at the point, where the proof ceases to be relevant. The enlargement of the sphere of evidence, so far as the testimony is competent, and material, is highly desirable. Any thing which affords a fair presumption, or proof, should be received; for so great is the temptation to the concealment of truth, and to the misrepresentation of facts, that no competent means of ascertaining the truth ought to be neglected. 1 *Stark. Ev.* 39.

That there is some danger that the evidence in question, might be misapplied, by the jury, to an unauthorized purpose, I am not disposed to deny; but in this there is nothing uncommon. If testimony is competent and relevant, it must be admitted; and confidence must be put in the jury, that they will legally apply it. It is the duty of the judge to instruct the jury as to the application of the evidence; and that it was done in this case, there is no doubt; and it is the duty of the jury, to observe the direction of the court, on this point of law. That they exercised their jurisdiction soundly, is a presumption of law; and there must be something extremely peculiar, that should be permitted to stand in the way of public justice, by the rejection of pertinent and material evidence. No case or principle has been cited, to show the inadmissibility of the testimony received. On the contrary, the reception of it derives support from *Swearingen's* case, (in *Maryland,*) which was not very dissimilar from this.

PETERS, WILLIAMS and BISSELL, Js., were of the same opinion.

DAGGETT, J. said he should acquiesce in the opinion of the Court, though he doubted whether the evidence objected to was properly admitted, and should have been as well or better satisfied with a contrary decision on this point. One purpose for which the evidence, was admitted, was, to show a motive for the commission of the offence; and the jury would not be apt to distinguish between this and proving the offence itself. He concurred fully in the opinion that the communication made

by the juror, to the state's attorney, was not a sufficient ground of arrest.

Windham,
July, 1831.

New trial not to be granted.