WEBSTER BANK *v.* CHARLES FLANAGAN ET AL.
(AC 17530)

O'Connell, C. J., and Foti and Spear, Js.

---

Submitted on briefs October 29, 1998—officially released February 16, 1999

*Paul N. Gilmore* filed a brief for the appellant (defendant D.A.N. Joint Venture, A Limited Partnership).

*Richard B. Cramer* filed a brief for the appellee (plaintiff).

*Opinion*

FOTI, J. The defendant D.A.N. Joint Venture, A Limited Partnership (D.A.N.),[1] appeals from a judgment of

---

[1] D.A.N. is one of multiple defendants. The following defendants are not parties to this appeal: Charles A. Flanagan, the Internal Revenue Service, Great County Bank, Connecticut National Bank, D.A.P. Financial Services, Inc., Monarch Savings Bank, Cordone and Tonucci Plumbing, Heating and Maintenance Contractors, Lisa G. Flanagan and Sharyl Goodman.

strict foreclosure rendered by the trial court. The plaintiff, Webster Bank (Webster),[2] commenced this action to foreclose a mortgage from the defendant Charles A. Flanagan by way of a complaint filed on November 19, 1996. The trial court granted Webster's motion to cite in D.A.N. on January 8, 1997. D.A.N. argues on appeal that the trial court improperly (1) made numerous evidentiary rulings and (2) granted Webster's motion for strict foreclosure because Webster had failed to prove the essential elements of its case.[3] We hold that the trial court's evidentiary rulings were proper and that it properly found that Webster had proved its case. Accordingly, we affirm the judgment of the trial court.

Webster, through documents and testimony by Lisa Siedlarz-Jones, residential legal manager of Webster, introduced the following facts into evidence. On January 12, 1989, Flanagan executed an adjustable rate note with First Constitution Bank for $127,000 plus interest secured by an open-ended mortgage on Flanagan's property at 127 Whitney Avenue in Hamden. The mortgage was recorded in the Hamden land records on January 20, 1989.

On October 1, 1992, First Constitution Bank was declared insolvent by the Superior Court and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver. That order was also recorded in the Hamden land records. On October 2, 1992, the FDIC

---

[2] Webster Bank is no longer a party to this appeal. After the filing of this appeal, Wilshire Funding Corporation was substituted as plaintiff pursuant to Practice Book § 62-5.

[3] This court first had to resolve an issue of attorney-client conflict of interest prior to determining whether it could decide this appeal. Counsel for D.A.N. represented Eagle Bank in two foreclosure cases pending in the Superior Court. Due to a merger of Eagle Bank and Webster Bank effective April 15, 1998, defense counsel now represents Webster Bank in the aforementioned foreclosure cases. This court, after a hearing on September 14, 1998, on the conflict of interest, secured waivers of the potential conflict from D.A.N., Webster and Wilshire Funding Corporation.

entered into a purchase and assumption agreement assigning to First Federal Bank (First Federal) all "right, title, and interest of the Receiver in and to certain assets of First Constitution . . . ." The FDIC prepared a notice of transfer listing all of the properties located in Hamden as to which it was transferring its interest as receiver to First Federal. This notice of transfer was executed on December 17, 1992, and was duly recorded in the Hamden land records.

On November 1, 1995, First Federal merged with Webster. As a result, Webster became the holder of all of First Federal's assets, including its mortgages. A change of name certificate declaring that First Federal had merged with Webster and officially changed its name to Webster Bank was filed in the Hamden land records on December 27, 1995. Webster initiated the present proceeding because Flanagan defaulted on his obligations under the First Constitution Bank note.

## I

D.A.N. argues that the trial court made six improper evidentiary rulings. The rulings relate to the admission of (1) the adjustable rate note, (2) the open-ended mortgage deed, (3) the notice of transfer, (4) the change of name certificate, (5) a computer printout of Flanagan's loan history and (6) an affidavit of debt prepared by Siedlarz-Jones. We disagree with D.A.N. that the admissions were improper.

"It is well settled that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make *every reasonable presumption* in favor of upholding the trial court's ruling, and only upset it for a *manifest abuse of discretion*.

. . . *State* v. *Coleman*, 241 Conn. 784, 789, 699 A.2d 91 (1997). Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, 247 Conn. 24, 37, 718 A.2d 425 (1998).

## A

D.A.N. argues that the adjustable rate note was improperly admitted because Webster failed to establish its authenticity. D.A.N. contends that Webster failed to authenticate the signature on the adjustable rate note as that of Flanagan. For a writing to be admitted into evidence, it must first be authenticated. A writing may be authenticated by identifying the signature contained in the document. *Hamilton* v. *Smith*, 74 Conn. 374, 379, 50 A. 884 (1902); *Nichols* v. *Alsop*, 10 Conn. 262, 267 (1834). "[W]here a writing is not witnessed, its authentication ordinarily requires proof merely of the signature of the writer." *Shulman* v. *Shulman*, 150 Conn 651, 657, 193 A.2d 525 (1963). A signature can be authenticated by a signatory to the document by acknowledgment. A signature can additionally be proved by a witness to the execution of the document or by a witness who is familiar with the signature in question and attests that it is genuine. See *Tyler* v. *Todd*, 36 Conn. 218, 222 (1869); *Lyon* v. *Lyman*, 9 Conn. 55, 59 (1831).

In the present case, Siedlarz-Jones was familiar with Flanagan's signature. D.A.N. objected on the ground that the witness did not have personal knowledge of Flanagan's signature. Siedlarz-Jones testified that she became familiar with Flanagan's signature by reviewing other documents. Siedlarz-Jones testified that she saw

Flanagan's signature on the mortgage *and* on a notarized affidavit.[4]

D.A.N. further argues that Webster was required to present to the court the exemplars on which the comparison of Flanagan's signature was based. It is true that comparison specimens must be proven. *Hayward* v. *Maroney*, 86 Conn. 261, 263, 85 A. 379 (1912). Here, however, Webster sought to prove the authenticity of Flanagan's signature on the note through the testimony of Siedlarz-Jones, not by comparison of that signature with exemplars. It is of no moment that Siedlarz-Jones was not a handwriting expert, as anyone familiar with the signature in question may testify as to its authenticity. *Hamilton* v. *Smith*, supra, 74 Conn. 379–80. "Adequate familiarity may be present if the witness has seen the person write, or if he has seen writings *purporting* to be those of the person in question under circumstances indicating their genuineness." (Emphasis in original.) 2 C. McCormick, Evidence (4th Ed. 1992) § 221, p. 41. Siedlarz-Jones viewed Flanagan's signature under such circumstances. As noted above, she testified that she saw his signature on a notarized affidavit. An acknowledgment before a notary public "serves to authenticate the instrument by furnishing formal proof, through the action of the public official taking the acknowledgment, that the instrument was actually executed by the person whose signature appears upon it." *Commercial Credit Corp.* v. *Carlson*, 114 Conn. 514, 517, 159 A. 352 (1932). Given such strong indication that the signature on the affidavit was genuine, we can-

---

[4] The following colloquy took place during voir dire:

"[Defense Counsel]: You were not present at the signing of the note, were you?

"[Siedlarz-Jones]: No, I was not.

"[Defense Counsel]: And how is it that you claim to have become familiar with the signature of Mr. Flanagan?

"[Siedlarz-Jones]: We have a—two documents actually that have a notary authentication that is his signature and they all are the same signature."

not find that the trial court abused its discretion in crediting Siedlarz-Jones' authentication testimony and in admitting the adjustable rate note.

## B

D.A.N. next claims that the trial court improperly admitted the open-ended mortgage deed, arguing that the mortgage lacked sufficient authentication. We hold that the reasoning of part I A also applies to the mortgage.

D.A.N. also argues that because Connecticut is a title theory state, Webster was required to produce the original mortgage at trial and to authenticate it through a subscribing witness to the mortgage. D.A.N. claims that Webster failed to authenticate the mortgage properly. D.A.N. relies on *Loewenberg* v. *Wallace*, 147 Conn. 689, 696, 166 A.2d 150 (1960), for this proposition. See also *Remington Investments, Inc.* v. *National Properties, Inc.*, 49 Conn. App. 789, 797, 716 A.2d 141 (1998). The trial court, however, had a proper foundation to admit the mortgage. The mortgage was subscribed by two witnesses as required by General Statutes § 47-5. Additionally, the mortgage was attested to by Flanagan in the presence of a commissioner of the Superior Court. An acknowledgment "serves to authenticate the instrument by furnishing formal proof, through the action of the public official taking the acknowledgment, that the instrument was actually executed by the person whose signature appears upon it." *Commercial Credit Corp.* v. *Carlson,* supra, 114 Conn. 517.

"It is difficult to explain why there should be a requirement for both subscribing witnesses and an acknowledgment, since the taking of an acknowledgment and the use of a subscribing witness both accomplish the same purpose—assuring that the conveyance is genuine and not fraudulent. The voluntary use of witnesses at common law predated the development

of the acknowledgment, and certainly was a valuable tool to prove a document, especially when general illiteracy caused many signatures to be made with marks. Today, with the ready availability of notaries public, the objective of establishing genuineness can usually be accomplished with an 'official witness,' the notarial officer. In any event, it seems redundant to require both witnesses and an acknowledgment." 14 R. Powell, Powell on Real Property (1998) § 898 (1) (h), p. 81A-73. We believe that the acknowledgment takes the place of the testimony or proof of the unavailability of a subscribing witness. The trial court was within its bounds in admitting the mortgage.

C

D.A.N. next claims that the trial court improperly admitted the notice of transfer, arguing that the notice does not comply with General Statutes §§ 47-5, 47-10 and 49-10 and therefore is inadmissible. We are unpersuaded.

Section 47-5 provides in relevant part: "(a) All conveyances of land shall be: (1) In writing; (2) if the grantor . . . is a corporation, limited liability company or partnership, subscribed by a duly authorized person; (3) acknowledged by the grantor . . . or such duly authorized person to be his free act and deed; and (4) attested to by two witnesses with their own hands." General Statues § 47-10 provides: "No conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which the land lies. When a conveyance is executed by a power of attorney, the power of attorney shall be recorded with the deed, unless it has already been recorded in the records of the town in which the land lies and reference to the power of attorney is made in the deed." Section 49-10[5] provides that

<hr>

[5] General Statutes § 49-10 provides: "(a) Whenever any debt or other obligation secured by mortgage, assignment of rent or assignment of interest

an assignment of an obligation must follow a particular form.

In the present case, the notice of transfer was accomplished through a power of attorney. The power of attorney was not filed with the notice in Hamden, but it was referenced in the notice as being filed in the Hartford land records. D.A.N. claims that this is a fatal flaw in the validity of the notice of transfer, thus making it inadmissible.[6] D.A.N. cites no authority for that proposition, and our own research has found none. Sections 47-5, 47-10 and 49-10 do not indicate that a flaw in the instrument or recordation of the instrument would make it inadmissible as evidence. That flaw goes only to the weight and credibility of the evidence, which is within the sole province of the trier of fact to determine.

in a lease, is assigned by an instrument in writing containing a sufficient description to identify the mortgage, assignment of rent or assignment of interest in a lease, as security for the debt or obligation, and that assignment has been executed, attested and acknowledged in the manner prescribed by law for the execution, attestation and acknowledgment of deeds of land, the title held by virtue of the mortgage, assignment of rent or assignment of interest in a lease, shall vest in the assignee. An instrument substantially in the following form is sufficient for such assignment:

"Know all Men by these Presents, That . . . . of . . . . in the county of . . . . and state of . . . . does hereby grant, bargain, sell, assign, transfer and set over a certain (mortgage, assignment of rent or assignment of interest in a lease) from . . . . to . . . . dated . . . . and recorded in the records of the town of . . . . county of . . . . and state of Connecticut, in book . . . . at page . . . .

"In Witness Whereof . . . . have hereunto set . . . . hand and seal, this . . . . day of . . . . A.D. . . . .

"Signed, sealed and delivered in the presence of

(Seal)

(Acknowledged)

"(b) Whenever an assignment of any residential mortgage loan (1) made by a lending institution organized under the laws of or having its principal office in any other state and (2) secured by mortgage on residential real estate located in this state is made in writing, the instrument shall contain the name and business or mailing address of all parties to such assignment."

[6] The validity of the notice of transfer will be discussed in greater detail in part II.

We disagree with D.A.N. that the trial court abused its discretion in admitting the notice of transfer.

## D

D.A.N. argues that the trial court improperly admitted the change of name certificate over its objection. We find that the trial court correctly admitted the certificate into evidence.

D.A.N. argues that the certificate does not conform to the requirements of General Statutes § 52-165[7] and therefore is inadmissible. Specifically, D.A.N. argues that the certificate contains no statement that the persons executing the certificate were authorized by their respective corporations to execute the certificate. We fail to see the reasoning behind D.A.N.'s argument. Section 52-165 makes no requirement that a corporate officer state that he is authorized to act in the manner in which he is acting. Section 52-165 merely prescribes that the corporate officer's act may be proved by a document under seal; it does not question the authority of the corporate officer. Additionally, "the question [of] whether [the officers] had authority in fact to do what [they] did was necessarily one to be inquired into aliunde." *Hart* v. *Stone*, 30 Conn. 94, 96 (1861).

Webster argues that the certificate was properly recorded in the Hamden land records pursuant to General Statutes § 47-12. We agree. The recordation served to place the public on notice that First Federal Bank had changed its name to Webster Bank. Section 52-165 allows for the admission of certified copies of land

---

[7] General Statutes § 52-165 provides: "The entries or records of all corporations and all public offices, where entries or records are made of their acts, votes and proceedings, by some officer appointed for that purpose, may be proved by a copy certified under the hand of such officer, and the seal of such corporation or office, if any; and, if any such officer knowingly makes a false certificate, he shall be subject to the penalties provided for false statement."

records into evidence. The certificate, properly certified by the Hamden town clerk, is admissible as a public record. The trial court, therefore, did not abuse its discretion by admitting the certificate into evidence.

E

D.A.N.'s final evidentiary claims relate to a computer and microfiche printout of Flanagan's loan history and an affidavit of debt prepared by Siedlarz-Jones. D.A.N. argues that these documents are inadmissible hearsay as they do not conform to the business records statute, General Statutes § 52-180.[8] We hold that the documents

---

[8] General Statutes § 52-180 provides: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility.

"(c) Except as provided in chapter 3, if any person in the regular course of business has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of them to be recorded, copied or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is otherwise required by statute. The reproduction, when satisfactorily identified, shall be as admissible in evidence as the original in any judicial or administrative proceeding, whether the original is in existence or not, and an enlargement or facsimile of the reproduction shall be likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of court. The introduction of a reproduced record, enlargement or facsimile shall not preclude admission of the original.

were properly admitted under the business records statute.

1

"Hearsay is an out-of-court statement that is offered to establish the truth of the facts contained in the statement. . . . *State* v. *Miller*, 154 Conn. 622, 629, 228 A.2d 136 (1967), and *Murray* v. *Supreme Lodge, N.E.O.P.*, 74 Conn. 715, 718, 52 A. 722 (1902). A statement may or may not be hearsay, depending upon the purpose for which it is offered. When declarations are offered . . . for the purpose of showing that such statements were made and not that what was declared was true, they do not come within the rule. . . . *McDermott* v. *McDermott*, 97 Conn. 31, 37–38, 115 A. 638 (1921); *Engel* v. *Conti*, 78 Conn. 351, 354, 62 A. 210 (1905)." (Internal quotation marks omitted.) *State* v. *Williams*, 48 Conn. App. 361, 367, 709 A.2d 43, cert. denied, 245 Conn. 907, 718 A.2d 16 (1998). There is no doubt that the printout of Flanagan's loan history was an out-of-court statement being used to prove the matter asserted—that Flanagan had a history of loan payments and had eventually defaulted on the loan. Accordingly, it was hearsay.

Having established that the printout was hearsay, we must next determine whether the trial court properly admitted it under General Statutes § 52-180, the business records exception to the hearsay rule. Section 52-180 provides for a three part test: (1) the document must be made in the regular course of business; (2) it must be the regular course of a business to create that document; and (3) it must have been made contemporaneously with the events it memorialized or within a reasonable time thereafter.

"(d) The term 'business' shall include business, profession, occupation and calling of every kind."

D.A.N. claims that the printout should not have been admitted because Siedlarz-Jones lacked working knowledge or firsthand experience as to how the information memorialized in the computerized records of the banks was verified. Additionally, D.A.N. argues that Siedlarz-Jones lacked personal knowledge as to how the interest rates that the banks received from the Federal Reserve Board were verified and entered into the computer system. D.A.N. also argues that the loan history is inadmissible because the Federal Reserve Board did not have a business duty to transmit accurate interest rate information to the banks. Furthermore, D.A.N. argues that the loan history was inadmissible because Siedlarz-Jones lacked personal knowledge of how information was transferred from the computer records to microfiche. We are unpersuaded by D.A.N.'s arguments.

"Section 52-180 should be liberally construed. . . . Appellate review of the admission of a document under § 52-180 is limited to determining whether the trial court abused its discretion." (Citations omitted.) *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, 219 Conn. 787, 795, 595 A.2d 839 (1991). "The witness whose testimony provides the foundation for the admission of a business record must testify to the three statutory requirements, but it is not necessary that the record sought to be admitted was made by that witness or even that the witness have been employed by the business at the time the record was made." Id., 794. Furthermore, the accuracy and veracity of the document go to the document's weight, which is a matter left to the trier of fact to determine. *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 602, 717 A.2d 713 (1998).

D.A.N. relies on *Federal Deposit Ins. Corp.* v. *Keating*, 44 Conn. App. 556, 690 A.2d 429 (1997), for the

proposition that the computer records are not admissible. In *Keating*, the FDIC attempted to admit in evidence, through a witness, computer records that contained the debtor's account information. The witness in *Keating* had no familiarity with the computer system, nor did he have an opinion as to the accuracy of the information contained therein. Id., 559. *Keating* is distinguishable from the present case. Siedlarz-Jones worked for First Constitution for eleven years. Furthermore, she testified that the records were verified by bank officials. We find that D.A.N.'s reliance on *Keating* is misplaced.

In the course of Siedlarz-Jones' employment with First Constitution, she became familiar with the manner in which payments were recorded in the computer system.[9] While she testified that she did not know exactly how the information entered into the computer system was verified, that does not matter for the purpose of admissibility. See General Statutes § 52-180 (b). The witness testified that the entries were made when the bank received payments from its mortgagors.[10] She also

---

[9] "Q. Miss Jones, were you formerly an employee of First Constitution Bank?

"A. Yes.

"Q. What were your positions at First Constitution Bank?

"A. I worked in accounting, I worked in loan review, in loan servicing, underwriting. I was a teller briefly, student lending, I have had numerous positions there. I worked there for eleven years.

"Q. In your job or jobs at First Constitution Bank were you familiar with the record keeping and bookkeeping system of the bank?

"A. Yes.

* * *

"Q. Are you familiar with the bookkeeping and the record keeping and the computer operations of the Foreclosure Department—or excuse me, of the Mortgage Department?

"A. Yes.

* * *

"Q. Did you know how the system operated or worked?

"A. Yes, I do."

[10] "The Court: And was it the regular course of business of the First Constitution Bank to keep such records?

testified that it was in the common practice of the banks, First Constitution, First Federal and Webster, to enter the transactions into the computer. The witness, while testifying that she was not familiar with the technical process of creating microfiche copies of computer records, did testify that the banks made such copies of their computerized records on a regular basis.

D.A.N. further argues that the loan history is inadmissible because the interest rate information contained in it was received from the Federal Reserve Board, which had no duty to the banks to transmit accurate interest rates. It is true that if the document offered was not prepared by the proponent, the document's author must have a business duty to the proffering organization to create that record for it to be admissible under § 52-180. *River Dock & Pile, Inc.* v. *O & G Indus-*

"[Defense Counsel]: Objection.

"[The Witness]: Yes.

"[Defense Counsel]: Foundation.

"[The Court]: Thank you. And you worked there on a day-to-day basis, am I correct?

"[The Witness]: Yes, I did.

"[The Court]: Overruled . . . . And do these records record transactions at the time that they take place or took place or shortly thereafter?

"[Defense Counsel]: Objection. Foundation. She has not testified having personally worked on and entered the records. Familiarity.

"[The Court]: She doesn't have to personally enter the records.

"[Defense Counsel]: She has to have a working knowledge of the means and methodology in which they were prepared.

"[The Court]: . . . Yes or no?

"[The Witness]: Yes.

"[The Court]: Now can you give me an example of how these records are transcribed? I am talking about the original records.

"[The Witness]: If I understand you correctly, for example, if somebody made a payment what would happen?

"[The Court]: Yes.

"[The Witness]: [First] Constitution [Bank] was under a batch system, as long as payments were made before 3:00 on any given day the payments all would be shipped to the operations center on Water Street and they had a deposit operations department that would post all the payments and you could go live on the computer and look and see any of the payments that were posted right onto any given account."

*tries, Inc.*, supra, 219 Conn. 795. The present case, however, does not present that problem. Webster did not attempt to offer a document created by the Federal Reserve Board as a business record. The witness merely testified that the banks received their interest rate information from the Federal Reserve Board. D.A.N.'s contention that the information might be inaccurate again goes to the weight of the document, not its admissibility. Furthermore, we find it hard to believe that the Federal Reserve Board would transmit inaccurate or faulty interest rates to this nation's banks.

D.A.N.'s argument that the witness lacked personal knowledge as to the accuracy of the interest rates transmitted by the Federal Reserve Board also fails. The witness testified that that information was regularly entered into the banks' computers. The fact that she may not have had personal knowledge of the accuracy of that information goes to the evidence's weight; General Statutes § 52-180 (b); not its admissibility.

Given the witness' history of employment with the original mortgagee and her testimony that the computer records were kept in the regular course of business, that the bank was a business where the documents were regularly created and that the records were created contemporaneously with the events they memorialized, we fail to see how the loan history was improperly admitted into evidence.

2

D.A.N. claims that the trial court improperly admitted an affidavit of debt prepared by Siedlarz-Jones, summarizing Flanagan's account status with Webster. D.A.N. argues that the affidavit does not conform to the requirements of § 52-180. We conclude that the affidavit was properly admitted.

D.A.N. argues that Webster's affidavit of debt was prepared in accordance with Practice Book § 527,[11] now § 23-18, and therefore was inadmissible. D.A.N. filed a disclosure of defense in which it challenged the amount of the debt. Because D.A.N. disclosed this defense, the use of Practice Book § 527 to introduce the affidavit is prohibited, and the hearsay rules apply. *Burritt Mutual Savings Bank of New Britain* v. *Tucker*, 183 Conn. 369, 375, 439 A.2d 396 (1987).

D.A.N. argues that the affidavit was not prepared in the ordinary course of business, but in preparation for litigation. Although that may be true, we do not agree that that alone makes the affidavit inadmissible. The general rule is that "documents prepared for litigation are excluded, not on a per se basis, but rather upon an inquiry into whether such documents bear circumstantial indicia of lack of trustworthiness. In the exercise of appropriate discretion, courts may exclude such records where they are self-serving and a motive for falsification can be demonstrated." *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 140–41, 520 A.2d 173 (1987). In the present case, the affidavit was sworn to before a notary public, thus making the affiant subject to penalty for giving false information. Additionally, Webster frequently prepares affidavits of debt for foreclosure proceedings. Given these factors, we conclude that the motive for creating the affidavit was not falsification nor was the affidavit self-serving. We do not, however, go so far as to hold that all affidavits created in preparation for litigation are admissible under the business records exception to the hearsay rule.

---

[11] Practice Book § 527 (a), now § 23-18, provides: "In any action to foreclose a mortgage where no defense as to the amount of the mortgage debt is interposed, such debt may be proved by presenting to the judicial authority the original note and mortgage, together with the affidavit of the plaintiff or other person familiar with the indebtedness, stating what amount, including interest to the date of the hearing, is due, and that there is no setoff or counterclaim thereto."

Furthermore, we conclude that the affidavit, when viewed in light of the other documents properly admitted in evidence, was properly admitted under the business record statute. We rely on *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 246 Conn. 600–603. In *New England Savings Bank*, our Supreme Court held that where the plaintiff sought to introduce a statement of the mortgagee's account in evidence, it was admissible because of the supporting evidence. Id., 597–98. The plaintiff in *New England Savings Bank* offered documents that showed the starting figure of the debt from the previous holder of the mortgage, a failed institution, and offered the testimony of an officer of the failed institution as to the authentication of the documents containing the debt's starting figure.

This case parallels *New England Savings Bank*. Webster introduced the original note and mortgage, which had been transferred to Webster through the FDIC and merger of First Federal and Webster. The witness authenticating the documents was an employee of the original mortgagee, First Constitution Bank. Additionally, Webster entered into evidence Flanagan's loan history, which we have held was properly admissible as a business record. We hold that the affidavit, given the admissibility of the loan history, note and mortgage, was properly admitted into evidence.

## II

D.A.N.'s second claim is that the trial court improperly rendered a judgment of strict foreclosure in favor of Webster. D.A.N. argues that Webster did not make out its prima facie case for a judgment of strict foreclosure. We disagree and affirm the trial court's judgment.

## A

To make out its prima facie case, Webster had to prove by a preponderance of the evidence that it was

the owner of the note and mortgage and that Flanagan had defaulted on the note.

D.A.N. argued that the notice of transfer was faulty because it was executed by a power of attorney that was not filed in Hamden with the notice of transfer, but was referenced in the notice of transfer as being filed in Hartford. General Statutes § 47-10 provides: "No conveyance shall be effectual to hold any land against any other person but the grantor or his heirs, unless recorded on the records of the town in which the land lies. When a conveyance is executed by a power of attorney, the power of attorney shall be recorded with the deed, unless it has already been recorded in the records of the town in which the land lies and reference to the power of attorney is made in the deed."

Webster argues that § 47-10 requires that a power of attorney must be filed with the conveyance only when a person, as opposed to a corporation, is the transferor. We agree. General Statutes § 47-5 clearly distinguishes between two types of transferors: natural persons and business entities. Section 47-5 provides that when a conveyance is by a corporation, that instrument need only be signed by "a duly authorized person."

When read together, §§ 47-5 and 47-10 clearly indicate that it is only when a natural person attempts to convey property through a power of attorney that the instrument creating the power must be filed with the conveyance, or have been previously filed in the town where the property is located and be properly referenced to have legal effect. Because a corporation is an artificial person, it necessarily acts through others. Furthermore, it is well settled that a conveyance by a corporation need not state the authority of the person claiming to act on the corporation's behalf. *Hart* v. *Stone*, supra, 30 Conn. 96.

Neither D.A.N. nor Webster cited any cases dealing with the filing of a power of attorney with a conveyance. Our research has uncovered only one. In *Family Financial Services, Inc.* v. *Spencer*, 41 Conn. App. 754, 762, 677 A.2d 479 (1996), this court held that a transfer executed by way of a power of attorney, where the power of attorney was not filed with the conveying instrument, was insufficient to hold the transfer valid against the defendant. While *Family Financial Services, Inc.*, might seem to favor D.A.N.'s position, it is distinguishable. In *Family Financial Services, Inc.*, the power of attorney was executed by individuals, not a corporation. If the notice of transfer in the present case had been executed by a power of attorney on behalf of an individual, then *Family Financial Services, Inc.*, would apply and the notice would be ineffective against D.A.N. We hold that *Family Financial Services, Inc.*, does not apply where a power of attorney is executed on behalf of a corporation. Because the notice of transfer is not fatally flawed, the chain of title in Webster was unbroken.

B

We next consider whether Webster introduced sufficient evidence to constitute a prima facie case concerning its right to foreclose. "The standard of review of a judgment of foreclosure by sale or by strict foreclosure is whether the trial court abused its discretion. *Constitution Bank & Trust Co.* v. *Robinson*, 179 Conn. 232, 238, 425 A.2d 1268 (1979); *City Savings Bank* v. *Lawler*, 163 Conn. 149, 155, 302 A.2d 252 (1972)." *Abacus Mortgage Ins. Co.* v. *Whitewood Hills Development Corp.*, 2 Conn. App. 460, 464, 479 A.2d 1231 (1984). "In order to establish a prima facie case, the proponent must submit evidence which, *if credited,* is sufficient to establish the fact or facts which it is adduced to prove. . . . *Berchtold* v. *Maggi*, 191 Conn. 266, 270, 464 A.2d 1 (1983) . . . ." (Citation omitted; emphasis in original;

internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 246 Conn. 608.

Webster introduced evidence establishing the original debt, the interest accrued, its attorney's fees and Flanagan's default on the note and mortgage. The trial court, on an oral motion for articulation by D.A.N., merely stated, "I will articulate it right now. I find from the evidence that the plaintiff has proven that these mortgagors, the mortgagor—let me have the note—that the mortgagor Charles A. Flanagan is indebted to it in the sum of $134,578.88 as shown on the affidavit of debt." The trial court further stated that "the debt was proven." The trial court did not further articulate its findings, and D.A.N. did not move for further articulation. There is no further indication from the trial court as to the basis for its opinion. We will not speculate as to the trial court's impressions or the weight it gave to the specific exhibits or the witness' testimony.

The trial court made a factual finding that was supported by the evidence. We will not disturb it. The trial court did not abuse its discretion in rendering a judgment of strict foreclosure for Webster.

The judgment is affirmed.

In this opinion the other judges concurred.