[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION DE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (#111) AND DEFENDANTS CROSS MOTION FOR SUMMARY JUDGMENT (#116)
The plaintiff, Rudra Tamm, brought this foreclosure action on December 13, 1999, against the defendants, Carey and Ralph Gangitano, alleging the following facts. On July 1, 1999, the defendants owed the plaintiff $675,000, as evidenced by their two promissory notes, one for $630,000 and one for $45,000.[1] On the same day, Carey Gangitano executed a mortgage deed (third mortgage) in favor of the plaintiff to secure the $45,000 loan, pledging as collateral the premises situated in Greenwich, known as 5 Meadow Wood Drive (premises).[2] On July 20, 1999, Carey Gangitano executed another mortgage deed (second mortgage) to secure the $630,000 loan in favor of the plaintiff, also pledging the premises as collateral. The plaintiff duly recorded the two mortgage deeds in the Greenwich land records and is the owner of the promissory notes and mortgage deeds securing the notes (notes and mortgages). The defendants failed to make the payments due on October 1, November 1, and December 1, 1999. On October 16, 1999, the plaintiff notified the defendants in writing that they defaulted on their mortgage payment due on October 1, 1999, and that they had fifteen days to cure the default. On November 2, 1999, the plaintiff notified the defendants in writing that they had failed to cure the default and that the plaintiff had exercised his option to accelerate the entire debt under the notes and mortgages. The plaintiff seeks foreclosure of the mortgages, immediate possession of the premises, a deficiency judgment against the defendants, and reasonable attorney's fees and costs.
On June 28, 2000, the plaintiff filed a motion for judgment for strict foreclosure. On August 23, 2000, the plaintiff filed a "memorandum in support of foreclosure." On September 25, 2000, the defendants filed a motion to dismiss the plaintiff's foreclosure action, or a "motion for relief on alternate grounds in equity," requesting that the court reinstate the second and the third mortgages by ordering the defendants CT Page 3368 to pay all arrearages and costs. On October 23, 2000, the court, Hickey,J., issued a memorandum of decision, denying the motion.[3]
On November 9, 2000, the defendants filed an answer, special defense and counterclaim, accompanied by a copy of an agreement between the parties, dated March 6, 2000 (agreement). They deny in their answer that they defaulted on their mortgage payments, that they owe any balance due under the mortgages, and that the plaintiff had given them notice regarding their default, failure to cure the default, and the plaintiff's election to accelerate.
In their special defense, the defendants claim that they executed the agreement with the plaintiff on March 6, 2000. They claim that the agreement amended the schedule of the mortgage payment, that they made or tendered payments described in the agreement, that the plaintiff refused to accept payment after a certain date, in contravention of the agreement. They claim that pursuant to the terms of the agreement, they are entitled to the withdrawal of the plaintiff's motion for judgment of strict foreclosure and of the foreclosure action. They claim also that they are entitled to the reinstatement of their mortgage payments.
The defendants incorporate in their counterclaim their claims made in the special defense and assert that the plaintiff breached the agreement, causing them financial loss in the form of legal expenses, costs and expert fees in the defense of the foreclosure action, as well as anxiety and mental anguish. They seek monetary damages.
On November 14, 2000, the plaintiff filed a reply to the special defense, an answer to the counterclaim, and a special defense to the counterclaim. In his reply and answer, the plaintiff admits the existence of the agreement, but denies the remaining claims of the special defense and of the counterclaim. He argues in his special defense that the agreement is void because the defendants failed to comply with the schedule of payment of arrearages, as provided in the agreement, and failed to "continue to pay [the] first mortgage" and give him proof that the first mortgage was current, as provided in the agreement.
Also on November 14, 2000, the plaintiff filed a motion for summary judgment, supported by a memorandum of law and an affidavit of his own (plaintiff's first affidavit). On November 20, 2000, the plaintiff filed a supplemental affidavit of his own (plaintiff's second affidavit). On December 1, 2000, the defendants filed an objection to the plaintiff's motion for summary judgment land a cross motion for summary judgment, supported by a memorandum of law and an affidavit of Ralph Gangitano (defendants' affidavit).[4] On December 4, 2000, the plaintiff filed a supplemental memorandum of law in support of his motion for summary CT Page 3369 judgment and a supplemental affidavit of his own (plaintiff's third affidavit).
"Practice Book . . . § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Rivera v.Double A Transportation, Inc., 248 Conn. 21, 24, 727 A.2d 204 (1999).
"[A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to thenonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Citations omitted; emphasis in original; internal quotation marks omitted.) Millerv. United Technologies Corp., 233 Conn. 732, 752, 660 A.2d 810 (1995). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031
(1988). "The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." (Internal quotation marks omitted.) Pion v. Southern New England Telephone Co.,44 Conn. App. 657, 663, 691 A.2d 1107 (1997).
It is not disputed that the defendants defaulted on their mortgage payment for October 1, 1999.[5] It is not disputed either that the parties reached the agreement on March 6, 2000, setting forth a schedule of payments for the defendants to bring the arrearages current.[6] In the agreement, the defendants agree to pay mortgage payments for October and November of 1999, totaling $4562, upon signing the agreement (¶ 1), those for December of 1999 and January of 2000, in the same amount, by April 30, 2000 (¶ 2), those for February and March of 2000, in the same amount, by May 31, 2000 (¶ 3), those for April and May 2000, in the same amount, by June 30, 2000 (¶ 4), and those of June and July of 2000, in the same amount, by July 31, 2000 (¶ 5). The defendants also agree to pay costs of the plaintiff's foreclosure suit, appraisal costs, plus interests, and make current mortgage payment on and after CT Page 3370 August 1, 2000 (¶ 6). In addition, the defendants agree to "continue to pay [the] first mortgage, taxes and all other house expenses, and give [the plaintiff] proof that the first mortgage is current" (¶ 8). In return, the plaintiff agrees, upon receipt of the first payment, that he will remove the lis pendens (¶ 1) and withdraw his motion for judgment of strict foreclosure and not contest opening of the default for failure to plead (¶ 9). The plaintiff further agrees not to file additional motions in the foreclosure action "[s]o long as payments are made according to this agreement (¶ 10). Finally, the plaintiff agrees to withdraw the pending foreclosure action "after the "August 2000 payment is made timely, and all other payments due as per this agreement have been made" (¶ 11). One sentence in paragraph ten of the agreement is crossed out; the sentence reads: "In event payments are not timely made, or are made by checks that are not honored, [the plaintiff] may proceed with this foreclosure" (sentence).
It is not disputed that the defendants failed to timely make the payment due on May 31, 2000, as required under paragraph three of the agreement.[7] It is not disputed either that the defendants failed to keep the first mortgage current and give the plaintiff proof that the first mortgage was current, as required under paragraph eight of the agreement,[8] as well as under the notes and mortgages.[9] Nor is it disputed that the defendants failed to pay real estate taxes and sewer assessments due in January and July, 2000, as required under paragraph eight of the agreement, as well as under the notes and mortgages,[10]
and that the premises is now encumbered by a tax lien.[11]
In his motion for summary judgment, the plaintiff argues that there is no genuine issue of material fact as to the defendants' liability and that he is entitled to a judgment of foreclosure as a matter of law. Specifically, he attests in his affidavits that the defendants defaulted under the original the original schedule of payment and failed to cure the default after being given written "notice to cure. He attests further that that the defendants defaulted under the amended schedule of payment, as provided in the agreement, and breached the terms and conditions of the agreement in two other ways, namely, failure to keep the first mortgage current and failure to pay real estate taxes. He argues that these breaches of the agreement provide three independent grounds for his resumption of the foreclosure action.
The defendants have not disputed any of the above facts attested by the plaintiff. They argue, nevertheless, in their memorandum of law that their answer, special defense and counterclaim have denied the essential allegations of the complaint and have thereby created genuine issues of material fact.[12] Specifically, they argue that (1) the plaintiff has failed to show that he was entitled to bring the foreclosure action in CT Page 3371 December, 1999 because they had not received any written notice from the plaintiff regarding their default, right to cure the default, failure to cure, and the plaintiff's election to accelerate;[13] and (2) the plaintiff has expressly waived his right to resume the foreclosure action, in the event of the defendants' failure to abide by the terms and conditions of the agreement, by virtue of his excision of the sentence from paragraph ten of the agreement, as shown above.
Initially, the defendants are erroneous in claiming that their mere denial in their pleadings of the essential allegations of the complaint have created genuine issues of material fact. Practice Book § 10-50
provides in part: "Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus, accord and satisfaction . . . duress, fraud . . . payment (even though nonpayment is alleged by the plaintiff) . . . must be specially pleaded. . . ." See Danbury v. Dana InvestmentCorp., 249 Conn. 1, 17 ___ A.2d ___ (1999);Selvaggi v. Miron, 60 Conn. App. 600, 601-602, ___ A.2d ___ (2000). Even though the defendants give a general denial of their liability in their answer to the complaint, their special defense or affidavit do not dispute any of the plaintiff's averments regarding their default and failure to cure the default. The defendants' general denial of liability in a foreclosure action is, therefore, insufficient as a matter of law to create any genuine issue of material fact.[14]
There is no merit to the defendants' argument that the plaintiff was not entitled to bring the foreclosure action in December, 1999, because they never received any notice regarding their default, time to cure the default, failure to cure the default, and the plaintiff's election to accelerate. First, there is no genuine issue of material fact as to the evidence submitted by the plaintiff that he has provided the defendants with the requisite notice of the default, the right to cure and the election to accelerate. The plaintiff has attested that he hand delivered a written notice to the defendants when they defaulted on their payment due on October 1, 1999, informing them their default and right to cure within fifteen days; (plaintiff's first affidavit, ¶ 4; plaintiff's third affidavit, ¶ 7); and submitted a copy of his handwritten notice dated October 16, 1999. (Exhibit J attached to plaintiff's third affidavit). The plaintiff has further attested that on November 2, 1999, he sent a letter, via certified mail, return receipt requested, to the defendants, informing them of their failure to cure the default and his election to accelerate; (plaintiff's third affidavit, ¶ 8); and submitted a copy of the typewritten notice dated November 2, 1999, and a copy of the documentary evidence of his mailing on November 2, 1999. The latter shows that the letter was sent, via certified mail (Z 410 795 CT Page 3372 127), return receipt requested, to the home address of the defendants (5 Meadow Wood Drive, Greenwich, CT 06830), but was unclaimed: delivery was attempted on November 3, and again on November 10, before it was returned to the plaintiff on November 18, 1999. Even though the defendants' affidavit claims that they have never received either of the notices or letters; (defendants' affidavit, ¶ 10); they have not disputed any of the plaintiff's averments or evidence regarding his notice. Nor have they alleged that the mailing address used by the plaintiff was incorrect, or explained in any way why the letter, if sent, could not reach them. A mere denial in the defendants' affidavit of the allegations or averments in the plaintiff's complaint or affidavits is "an insufficient basis for the rendition of summary judgment." Gambardella v. Kaoud,38 Conn. App. 355, 360, 660 A.2d 877 (1995). The undisputed evidence indicates also that the defendants may have asserted lack of notice in bad faith by purposefully not claiming the letter.
Second, the defendants have waived any possible defense of lack of notice or improper acceleration by their agreement with the plaintiff on March 6, 2000, which modified the schedule of their payment and afforded them a second chance to cure the default. By their own admission, in the wake of the plaintiff's foreclosure action, they engaged in extensive negotiation with the plaintiff prior to the execution of the agreement. If they could have objected to the foreclosure action on grounds of lack of notice or improper acceleration, they had waived it by executing the agreement with the plaintiff, under which they promised to pay the arrearages by certain dates to avoid the foreclosure action.
Third, the defendants have waived any possible defense of lack of notice or improper acceleration by their failure to do so in their prior pleadings. Practice Book § 10-6 sets forth the order of pleadings.[15]
Practice Book § 10-7 provides in part that "the filing of any pleading provided for by the preceding section will waive the right to file any pleading which might have been filed in due order and which precedes it in the order of pleading provided in that section." Having filed an answer and special defense, in which they could have asserted the defense of lack of notice or improper acceleration, but failed to do so, the defendants are deemed to have waived the defense and are estopped from asserting the defense now. Id.
Finally, the defendants are estopped from asserting any possible defense of lack of notice or improper acceleration because of their failure to plead it as a special defense. Practice Book 10-50, as discussed before, requires the defendants to specially plead any facts that are consistent with the allegations of the complaint but show, notwithstanding, that the plaintiff is not entitled to the foreclosure action. "If . . . a party seeks the admission of evidence which is CT Page 3373 consistent with a prima facie case, but nevertheless would [independently] destroy the cause of action, the new matter must be affirmatively pleaded as a special defense." (Internal quotation marks omitted.) Bernier v. National Fence Co., 176 Conn. 622, 629, 410 A.2d 1007
(1979). The burden of proving a special defense rests with the defendants. New England Savings Bank v. Bedford Realty Corp.,246 Conn. 594, 606 n. 10, 717 A.2d 713 (1998). The defendants have not asserted lack of notice or improper acceleration in their special defense; they had not even alleged lack of notice or improper acceleration prior to their present objection to the plaintiff's motion for summary judgment. They are, therefore, estopped by the rules of practice to raise any such defense in their affidavit or memorandum of law.
In sum, the defendants have failed to dispute the evidence submitted by the plaintiff that they had defaulted on the notes and mortgages and failed to cure the default after being notified of the default, their right to cure and the plaintiff's election to accelerate. In addition, they have failed to allege lack of notice or improper acceleration in their special defense. Therefore, there is no genuine issue of material fact as to the plaintiff's right to accelerate and bring the foreclosure action.
The defendants argue, next, that the plaintiff has expressly waived his right to resume the foreclosure action, in the event of noncompliance with the terms and conditions of the agreement, by virtue of his excision of the sentence from paragraph ten of the agreement. For the reasons discussed below, this argument is equally without merit.
"A mortgage[e] may waive his right to foreclose, either absolutely or for a limited period, by a sufficient agreement with the mortgagor, by which he relinquishes that right, the extent of the waiver, however, being limited by the nature of the agreement." 59 C.J.S. 648, Mortgages "535 (1998). On its face, the agreement operated as a conditional waiver of the plaintiff's foreclosure action. The agreement gave the defendants a second chance to cure its default and reinstate its mortgage payment, provided that they complied with the terms and conditions of the agreement as expressed in the agreement.
The defendants have not disputed the plaintiff's averments that they breached the agreement in three ways, as mentioned before. Nevertheless, they assert in their affidavit and memorandum of law that at the time of their execution of the agreement, there was an understanding between the parties that the defendants might not be able to satisfy every term or condition of the agreement. (Defendants' affidavit, ¶ 17.) Pursuant to this purported understanding, the defendants claim that the plaintiff CT Page 3374 agreed to excise the sentence from paragraph ten of the agreement. (Defendants' affidavit, ¶ 18). The defendants conclude that "[i]n so doing, the plaintiff expressly agreed not to proceed with this foreclosure action, even if payments to him or the first mortgage holder should fall behind." (Defendants' affidavit, ¶ 19).
The defendants have not pointed to any patent or latent ambiguity in the language of the agreement.[16] "Contractual language is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons could come to different conclusions as to the meaning of the contract." 17A C.J.S. 316, Contracts § 304 (1999). "The question of whether or not a contract is ambiguous is one of construction and interpretation." Id. On its face, the agreement is clear and unambiguous, setting forth a series of dates for the defendants to pay the arrearages and bring the mortgage payment current, and several conditions to be satisfied by the defendants for the withdrawal of the foreclosure action. In fact, the defendants admit in their affidavit that the March 6, 2000 agreement was the result of extensive negotiation over a period of two months and represented the "final draft" of a new schedule of payment. (Defendants' affidavit, ¶¶ 11-15). Instead of finding any ambiguity in the agreement, the defendants offer parol evidence of an intention of the parties, unexpressed or undisclosed in the agreement, to vary or contradict the express terms and conditions of the written agreement.
"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact; Gurliacci v.Mayer, 218 Conn. 531, 567, 590 A.2d 914 (1991); Finley v. Aetna Life Casualty Co., 202 Conn. 190, 199, 520 A.2d 208 (1987); [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. Thompson Peck, Inc. v. Harbor Marine Contracting Corp., 203 Conn. 123, 131,523 A.2d 1266 (1987)." (Internal quotation marks omitted.) Richter v.Danbury Hospital, 60 Conn. App. 280, 290 ___ A.2d ___ (2000). Where, as here, there is a written agreement, its construction "is a question of law for the court." Gordon v. Bridgeport Housing Authority, 208 Conn. 161,179, 544 A.2d 1185 (1988). "The construction of a contract to ascertain the intent of the parties presents a question of law when the contract or agreement is unambiguous within the four corners of the instrument." (Internal quotation marks omitted.) Way v. Way, 60 Conn. App. 188, 195, ___ A.2d ___ (2000).
Because the written agreement are clear and unambiguous as to the conditions precedent to the withdrawal of the foreclosure action, the parol evidence rule bars the introduction of any extrinsic evidence to vary or contradict the plain meaning of the agreement. Heyman AssociatesCT Page 3375No. 1 v. Insurance Co. of Pennsylvania, 231 Conn. 756, 779-81 653 A.2d 122
(1995). "The rule is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme." (Internal quotation marks omitted.) Id., 780. "The parol evidence rule does not of itself, therefore, forbid the presentation of `parol evidence,' that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant." (Internal quotation marks omitted.) Id., 780-8 1.
The parol evidence rule applies equally to the defendants' argument that the excision of the sentence from paragraph ten of the agreement evidenced an agreement by the plaintiff not to resume the foreclosure action if the defendants breached the agreement. "Contracts must be construed with reference to the words which they contain, and words which have been erased or crossed out ordinarily should not be construed. However, such words have been considered in ascertaining the intention of the parties where the contract is ambiguous." 17A. C.J.S. 353, supra, § 331. The result of the excision means that the sentence is not part of the agreement. Parol evidence rule bars the introduction of the excised sentence to vary or contradict the clear and unambiguous meaning of the agreement. Heyman Associates No. 1 v. Insurance Co. ofPennsylvania, supra, 231 Conn. 779-8 1.
Because it is undisputed that the defendants breached the terms and conditions of the agreement in three ways, the defendants are not entitled to the withdrawal of the foreclosure action. Because the conditional waiver of the right to continue the foreclosure action has become inoperative upon the breaches of the conditions precedent, the plaintiff is entitled to continue the foreclosure action. The defendants' special defense has asserted a mere conclusion of law regarding their entitlement to the withdrawal of the foreclosure action that is not supported by any facts alleged. There is, therefore, no genuine issue of material fact as to the special defense as well. "A party's conclusory statements, "in the affidavits and elsewhere," may not "constitute evidence sufficient to establish the existence of disputed material CT Page 3376 facts." Gutpa v. New Britain General Hospital, 239 Conn. 574, 583,687 A.2d 111 (1996).
In conclusion, the plaintiff has shown that there is no genuine issue of material fact as to the defendants' liability. The plaintiff has submitted evidence, undisputed by the defendants, showing the defendants' default under the original schedule of payment, their failure to cure the default twice, and their failure to keep the first mortgage current and pay real estate taxes in breach of the terms and conditions of the agreement, as well as those of the notes and deeds. There is also no genuine issue of material fact as to the defendant's special defense, which asserts a mere conclusion of law that is not supported by the facts alleged.
The plaintiff has also shown that he is entitled to the judgment of foreclosure as a matter of law. A prima facie case is established in a foreclosure action where the plaintiff is able to "prove by a preponderance of the evidence that [he is] the owner of the [notes] and [mortgages] and that [the defendants have] defaulted on the [notes]."Webster Bank v. Flanagan, 51 Conn. App. 733, 750-51, 725 A.2d 975
(1999). Because there is no genuine issue of material fact as to ownership and default, the plaintiff has established his prima facie case. Id. Because the plaintiff has established his prima facie case and because the defendants' special defense fails as a matter of law for asserting a mere conclusion of law that is not supported by the facts alleged, the plaintiff is entitled to judgment as a matter of law in this foreclosure action.
Because there is no genuine issue of material fact as to liability and the plaintiff is entitled to judgment as a matter of law, the plaintiff is entitled to summary judgment as to liability in this foreclosure action. Rivera v. Double A Transportation, Inc., supra, 248 Conn. 24; Practice Book § 17-49. The plaintiff's motion for summary judgment is hereby granted, and the defendants' cross motion for summary judgment denied.
HICKEY, J.