[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#108)
The plaintiff, Flagstar Bank FSB, filed a one count complaint on September 25, 2000, against twenty-four defendants, including Alphonse and Sandra Silvestri (the defendants), seeking foreclosure of a mortgage in default and immediate possession of the premises. It is undisputed that the defendants executed a promissory note in the amount of $420,000 and mortgaged their property to secure that note. The mortgage deed was CT Page 6587 recorded in the town hall where the property was located. The mortgage and note were assigned by the plaintiff to U.S. Bank National Association. The plaintiff alleges that the note and mortgage are now owned by the plaintiff and that the defendants are in default by virtue of nonpayment. The plaintiff has exercised its option to declare the entire balance due and payable.
The defendants filed an answer on October 16, 2000, admitting the allegations of the debt, the note, the mortgage, its recordation and their ownership and possession of the premises, denying that they are in default and leaving the plaintiff to its proof regarding assignment and current ownership of the note and mortgage. Further, the defendants filed a counterclaim on October 16, 2000, alleging conduct on behalf of the plaintiff in violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 46-110a et seq. The plaintiff filed a motion to strike the counterclaim on July 16, 2001, which was denied by the court, Tobin, J., on August 31, 2001, without an opinion.[1]
The plaintiff filed the motion for summary judgment presently before the court on December 14, 2001, with regard to its complaint, arguing that all the allegations have been proven by competent evidence or admission and that it is entitled to judgment as a matter of law, and that, furthermore, the defendants' counterclaim is legally and factually insufficient to bar summary judgment in its favor.[2] The defendants filed an objection to the motion for summary judgment on January 3, 2002, arguing that issues of fact remain with regard to whether the plaintiff has standing to bring this foreclosure action and whether, based on the alleged actions of the plaintiff, the defendants defaulted on the note and/or failed to cure the default.
"Practice Book . . . [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Rivera v.Double A Transportation Inc., 248 Conn. 21, 24, 727 A.2d 204 (1999).
To make out a prima facie case in a foreclosure action, the plaintiff must "prove by a preponderance of the evidence that it [is] the owner of CT Page 6588 the note and mortgage and that [the defendant has] defaulted on the note." Webster Bank v. Flanagan, 51 Conn. App. 733, 750-51, 725 A.2d 975
(1999). The plaintiff submits affidavits, documentary evidence and the defendants' admissions to establish its prima facie case. In their answer, the defendants admit the allegations of the note, the mortgage, the recordation and the ownership of the premises in question. (Defendants' Answer, ¶¶ 1, 2, 3 9.) To establish ownership of the note, the plaintiff submits the affidavit of the first vice president of Flagstar Bank, John Marecki, who states that the plaintiff is the current holder of the note and mortgage. (Affidavit of John Marecki, November 5, 2001 [Marecki Affidavit], ¶ 3.) It also submits the affidavit of Janet Burke, a title searcher, and copies of the recorded assignment and reassignment of the note and mortgage that were filed. To establish default, Marecki attests that said note and mortgage are now in default by virtue of nonpayment, and that the plaintiff attempted to contact the defendants and assist the defendants to cure the default sixty-five times according to the phone log sheets. (Marecki Affidavit, ¶¶ 4,7.) Further, the plaintiff submits as evidence invoices of the monitoring information with regard to the defendants' account and corresponding letters which show notice of delinquency, the amount required to cure the default and the requisite time frame.
In opposition to the plaintiff's motion for summary judgment, the defendants argue that the plaintiff is not the proper owner of the note and mortgage and therefore does not have standing to bring this foreclosure action. They further deny that they defaulted on the note and instead argue that it was the plaintiff's inequitable conduct that led to the nonpayment of the note and failure to cure the default.
The defendants first argue that the plaintiff does not have standing to bring this foreclosure action because the reassignment to the plaintiff was not valid, and that, therefore, U.S. Bank National Association owns the note and mortgage. In support of their position, the defendants offer as evidence the assignment of the mortgage by the plaintiff to U.S. Bank National Association and the reassignment back to the plaintiff. Specifically, the defendants argue that the reassignment is defective on its face in that it is not dated in the appropriate spot and is ambiguous with regard to what mortgage was being assigned.
"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . This court has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by CT Page 6589 the court sua sponte, at any time." (Citation omitted; internal quotation marks omitted.) Webster v. Zak, 259 Conn. 766, 774, ___ A.2d ___ (2002). "Here (in Connecticut) an assignment (of a mortgage) must be executed, attested and acknowledged in the manner prescribed by law for the execution, attestation and acknowledgement of deeds of land before title vests in the assignee. . . . General Statutes [§] 49-10." (Internal quotation marks omitted.) Northern State Financial, LLC v. Senie, Superior Court, judicial district of New Haven at New Haven, Docket No. 361204 (May 11, 1995, Levine, J.) (14 Conn.L.Rptr. 292, 293).
The reassignment of the mortgage and note submitted as evidence mirrors the form offered by General Statutes § 49-10 for an assignment of property.[3] Furthermore, the defendants' arguments for lack of standing are unpersuasive. First, the argument that the date on the assignment is not in the appropriate spot fails because the reassignment on its face reveals that it was witnessed and notarized on October 6, 2000. Therefore, the date that the reassignment was executed, attested and acknowledged is sufficiently set forth. Second, the argument as to ambiguous language also fails because the document identifies the mortgagors (the defendants), the mortgage and where it is recorded on the land records, which is sufficient to properly identify which mortgage was being reassigned. Moreover, the defendants make no claim that they had another mortgage with either the plaintiff or U.S. Bank National Association that could have caused confusion.[4]
For the foregoing reasons, the evidence submitted reveals no dispute as to the fact that the plaintiff is the owner of the note and mortgage at issue. Therefore, the plaintiff has standing to bring this foreclosure action.
The defendants also dispute that they are in default and/or failed to cure the default. Specifically, the defendants maintain, as further detailed in their counterclaim and exhibits thereto, that the plaintiff's inadequate response to their efforts to contact it for an explanation regarding default notices, which were, according to the defendants' understanding, unwarranted and being sent erroneously, raises issues of fact as to whether the defendants were in default and/or failed to cure the default.[5] As stated earlier, to establish default, the plaintiff submitted the affidavit of Marecki, the monitoring information with regard to the defendants' account and copies of corresponding letters delineating notice of delinquency, the amount owed to cure the default and a time frame for payment.
In support of their arguments, the defendants refer to their counterclaim, attached to which they have submitted as evidence a series of letters between the defendants' counsel and the plaintiff regarding CT Page 6590 the continuing receipt of delinquent notices.[6] The first letter is dated March 6, 2000, from the defendants' counsel to the plaintiff, explaining that even though the defendants had been making their mortgage payments on time, they had been receiving delinquency notices and that, every time they called to put an end to these communications, they were told that the notices were generated by the "system" and there was nothing anyone could do about it. The defendants received a written response from the plaintiff on April 1, 2000, however, this response provided no information or explanation for the delinquency notices, but again requested "your payment." In response, the defendants' counsel sent another letter to the plaintiff on April 10, 2000, with a copy of the March 6, 2000 letter communicating that the defendants had made all their payments on time and did not understand why they were receiving delinquency notices. The plaintiff submits a letter dated April 17, 2000, from the plaintiff to the defendants, stating that they were in default and, in order to cure the default, payments for March and April plus late charges were due. The defendants, who had sent payments in March and April (as admitted by the plaintiff as subsequently discussed), had their attorney send a letter dated May 1, 2000, to the plaintiff expressing that they "have had it with the harassment from Flagstar." Finally, on May 11, 2000, the plaintiff sent a written response detailing that the reason for the default was a payment made September 1999 that was returned for having insufficient funds. The plaintiff further acknowledged that it did receive a payment from the defendants for each month subsequent to September; however, the payments were credited to the most delinquent payment thereby resulting in a default each month. On May 19, 2000, the defendants' counsel sent a letter to the plaintiff, along with a check for the payment missed in September, explaining that the defendants were unaware that the September payment had never cleared and would have issued a new check had they not been "told on countless occasions that the [delinquency] notices sent. . . were computer generated and should be ignored." Thereafter, the plaintiff refused to accept payments representing the May, June, July and August, 2000 payments and instituted this suit in September, 2000.
These letters support the defendants' arguments of inequitable conduct on the part of the plaintiff which substantially contributed to the situation of the defendants being in default and/or thwarted their efforts to cure the default. Such inequitable conduct includes, inter alia, (1) failure of the plaintiff, despite the defendants' repeated requests, to communicate the precise nature of the default and (2) inducing mistaken beliefs and/or detrimental inaction on the part of defendants by directing them to ignore the computer generated default notices.
The evidence presented with regard to default by both parties is CT Page 6591 contradictory. The plaintiff's monitoring records of the defendants' account demonstrate a continuing effort to contact the defendants about their delinquent account and to bring it up to date. The correspondence submitted by the defendants, however, shows a continuing effort by their attorney to get an explanation for the delinquent notices they were receiving, and, further, that the defendants were told the delinquent notices were solely computer generated and to disregard them. Furthermore, it is undisputed that the defendants continued making payments on their account during the months in question, and, as soon as they were finally made aware of the nature of the default, i.e. a missed payment six months earlier due to a bounced check, they sent a substituted payment. The defendants represent that they were unaware of the missed September 1999 payment. The plaintiff, however, argues that general banking practices would have made the defendants aware of the bounced check and that it is under no duty to notify the defendants of bounced checks or to negotiate payment plans with borrowers. See GreenpointMortgage Corp. v. Ruisi, Superior Court, judicial district of Danbury, Docket No. 333106 (June 1, 1999, Moraghan, J.) ("Ordinarily, there is no fiduciary relationship between a lender and a borrower. . . . [N]ormally the bank and its customer stand at arms length. The bank has a right to further its own interest in a mortgage transaction and is under no duty to represent the customer's interest." (Citations omitted; internal quotation marks omitted.)). The defendants' awareness of the bounced check is thus a disputed factual issue and part of the larger set of disputed factual circumstances concerning whether the plaintiff acted inequitably toward the defendants.
In sum, the evidence submitted by the defendants shows that the default may have been the result of an accident or mistake on their part involving a bounced check and, further, that their failure to cure the default may be attributable to the plaintiff's conduct. "[I]f the mortgagor is prevented by accident, mistake or fraud, from fulfilling a condition of the mortgage, foreclosure cannot be had. . . ." (Internal quotation marks omitted.) LaSalle National Bank v. Shook, 67 Conn. App. 93,97, 787 A.2d 32 (2001). "Equity will inquire whether a refusal of relief because of a mistake, would be unconscionable in its consequences, and a hardship to the mortgagor; or whether the enforcement of the letter of the bargain would give the plaintiff an unconscionable advantage over the defendant." Petterson v. Weinstock, 106 Conn. 436, 443, 138 A. 433
(1927).
For the foregoing reasons, an issue of fact remains as to whether the defendants are in default of the note and/or failed to cure the default. Accordingly, summary judgment is denied on the basis that there exist disputed issues of fact material to whether the plaintiff is equitably entitled to a judgment of foreclosure. CT Page 6592
HICKEY, J.